250

SP/4 A. R. MONTGOMERY, IV, Pvt. James D. Baker, Pvt. J. H. Crees, PFC Ferard Denion, Pvt. Timothy H. Ford, Pvt. Herbert A. Gambill, PFC Ronald J. Grace, Pvt. David Duncan Mac Donald, Pvt. Timothy W. Niver, PFC Jon Darrel Stauffer and Pvt. Alan F. Terry, and all other similarly situated Petitioners, Petitioners-Appellants,

v.

Donald RUMSFELD, Secretary of Defense, Martin R. Hoffmann, Secretary of the Army, Colonel Samuel L. Stapleton, Commandant, Defense Language Institute, Presidio of Monterey, and Major General M. C. Ross, Seventh Infantry, Fort Ord and Fort Ord, California, Respondents-Appellees.

No. 76–2905.

United States Court of Appeals, Ninth Circuit.

March 23, 1978.

Francis Heisler (argued), of Heisler, Stewart, Silver & Daniels, Carmel, Cal., for petitioners-appellants.

George C. Stoll, Asst. U. S. Atty. (argued), San Francisco, Cal., for respondents-appellees.

Before WALLACE and SNEED, Circuit Judges, and BOLDT,* District Judge.

WALLACE, Circuit Judge:

Montgomery and other Army recruits (appellants) appeal the judgment of the district court denying certification of a class under Rule 23, Fed.R.Civ.P., denying their motion to bring in additional plaintiffs by an amended complaint, and dismissing without prejudice their action in which they seek a writ of habeas corpus and other relief to avoid further obligations under their enlistment contracts. We affirm in part, vacate and remand in part.

## I. The Facts

Appellants are Army enlisted personnel who allege that in accordance with the terms of their enlistment contracts and the representations made to them by the officers who recruited them, they are entitled to be trained in "MOS/Course 98L2L Translator/Interpreter"[1] at the Defense Language Institute (DLI) in Monterey, California. Appellants claim that after they com-

---

* Honorable George H. Boldt, United States District Judge, Western District of Washington, sitting by designation.

1. "MOS" abbreviates "Military Occupational Specialty."

menced their studies at the DLI, they first learned that the course of study actually given to them was "MOS/Course 98G2L Voice Intercept," a different kind of training which allegedly does not prepare them to be interpreters and translators, but merely teaches them to understand certain military and technical vocabulary in the various languages to which they are assigned. At least some of the appellants thereafter applied for discharge on the grounds of "erroneous enlistment." This relief was ultimately denied by the Chief of the Enlistment Personnel Action Division, whose decision was "by order of the Secretary of the Army."

The original eleven plaintiffs thereafter commenced this action in the district court requesting certification of a class under Rule 23, Fed.R.Civ.P., and asking for a writ of habeas corpus, a writ of mandamus, and injunctive relief to effect their release from the Army and damages. After the suit was filed, the parties stipulated to the addition of four additional plaintiffs. A hearing was held, after which the trial judge denied class certification and denied leave to add 13 more plaintiffs by amending the complaint. He also dismissed the action without prejudice because he believed appellants' failure to exhaust the administrative remedy of an appeal to the Army Board for the Correction of Military Records (ABCMR) deprived the court of jurisdiction. A temporary restraining order prohibiting the transfer of appellants from the jurisdiction of the court pending appeal was also denied on grounds that the danger of irreparable harm had not been shown. Two motions for similar relief before this court have also been denied.

## II. *Exhaustion of Remedies*

The district judge believed that because appellants had failed to exhaust their remedies before the ABCMR, he had "no alternative but to dismiss the complaint for lack of jurisdiction." Because the case law on the exhaustion of remedies doctrine is, to say the least, confused, it is understandable that he should so rule. We conclude, however, that the district judge was not compelled to disclaim jurisdiction over the action, and since he apparently did so only with reluctance, we vacate his order of dismissal and remand for further consideration in light of the discussion which follows.

The cases are in direct conflict as to whether the failure to exhaust administrative remedies necessarily deprives a reviewing court of jurisdiction. Some hold that the failure to pursue available administrative remedies is fatal to jurisdiction, e. g., *Hodges v. Callaway,* 499 F.2d 417, 421, 423–24 (5th Cir. 1974); *Ogden v. Department of Transp.,* 430 F.2d 660, 661–62 (6th Cir. 1970), while others maintain that the exhaustion doctrine goes "not to the jurisdiction of the trial court but to its judicial discretion . . . ." *Hayes v. Secretary of Defense,* 169 U.S.App.D.C. 209, 216, 515 F.2d 668, 675 (1975); *accord, United States ex rel. Tobias v. Laird,* 413 F.2d 936, 939 (4th Cir. 1969). *See NLRB v. Industrial Union of Marine & Shipbuilding Workers,* 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968). *Cf. Champagne v. Schlesinger,* 506 F.2d 979, 982 (7th Cir. 1974) ("exhaustion is a quasi-jurisdictional problem"). Unfortunately, the decisions within this circuit are not free of this inconsistency. *Compare Acfalle v. United States,* 438 F.2d 913, 914 (9th Cir.), *cert. denied,* 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 99 (1971) *and Hills v. Eisenhart,* 256 F.2d 609, 611 (9th Cir.), *cert. denied,* 358 U.S. 832, 79 S.Ct. 53, 3 L.Ed.2d 70 (1958) *with Kale v. United States,* 489 F.2d 449, 454 (9th Cir. 1973), *cert. denied,* 417 U.S. 915, 94 S.Ct. 2617, 41 L.Ed.2d 220 (1974) *and Krieger v. Terry,* 413 F.2d 73, 75–76 (9th Cir. 1969).

We believe recent Supreme Court decisions provide guidance in determining the jurisdictional implications of the exhaustion of remedies doctrine. In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court distinguished between exhaustion requirements that are "statutorily specified jurisdictional prerequisite[s]," and those that are "judicially developed." *Id.* at 766, 95 S.Ct. 2457. Valid

requirements in the first category may call into play constitutional concerns of separation of powers, and failure to adhere to them necessarily defeats jurisdiction. *See American Fed'n of Gov't Emp. Local 1904 v. Resor,* 442 F.2d 993, 994 (3d Cir. 1971).[2] Judicially developed exhaustion requirements, on the other hand, are inherently susceptible of judicial refinement and modification. Such court-made requirements are "tailored to fit the peculiarities of the administrative system Congress has created."[3] *McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). Accordingly, where the "particularities" of a concrete set of facts so require, federal courts have been willing to relax the absolute exhaustion requirement. Thus, in cases such as *McKart,* the courts may find it proper to dispense with complete exhaustion. In other circumstances, such as those present in *McGee v. United States,* 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971), a balancing of the competing interests involved may favor a requirement of exhaustion.

The underlying goal of the courts in making such determinations is, of course, the expeditious administration of justice, both in courts and agency tribunals. Accordingly, in determining whether the exhaustion rule should be rigidly applied, the Court has, on a case-by-case basis, employed a balancing analysis which considers both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances. *See McKart v. United States, supra,* 395 U.S. at 194–95, 89 S.Ct. 1657. In some cases, these competing interests may best be accommodated if the court requires the

**2.** As is made clear in *Salfi,* however, this does not preclude the agency itself from providing some flexibility in defining the terminal point of the administrative remedy that must be pursued. It merely prevents the courts from assuming jurisdiction before that point is reached. 422 U.S. at 766–67, 95 S.Ct. 2457. There may even be unusual circumstances, such as those in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), in which the courts themselves will decide when the point of sufficient exhaustion is reached. *Id.* at 330, 96 S.Ct. 893. But *Eldridge* makes clear that statutorily required exhaustion requirements have a "nonwaivable jurisdictional element," *id.,* which the courts must respect.

**3.** That the courts may, when not directed otherwise by statute or mandatory regulation, decline to require exhaustion of all possible administrative remedies is made clear by section 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, which provides in part:

> Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

*See United States v. Consolidated Mines & Smelting Co.,* 455 F.2d 432, 439–40 (9th Cir. 1971). The word "agency" as used in this section apparently includes the Army. 5

U.S.C. § 701(b)(1). *See Ornato v. Hoffman,* 546 F.2d 10, 14 (2d Cir. 1976); *United States ex rel. Schonbrun v. Commanding Officer,* 403 F.2d 371, 375 n.2 (2d Cir. 1968), *cert. denied,* 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969).

There is language in *Consolidated Mines, supra,* 455 F.2d at 440, arguably suggesting that not only does section 10(c) not require the exhaustion of intra-agency appeals not mandated by statute or regulation, but that the courts are not free to impose such a requirement on their own:

> The meaning of the statute clearly appears: Intra-agency appeals are not a prerequisite to judicial review except to the extent statutes or appropriate agency rules command otherwise.

Although this language might be read to preclude judicial insistence on exhaustion of administrative remedies when the statute or appropriate agency rules do not so insist, the courts have not considered themselves so limited. The *Consolidated Mines* discussion of the exhaustion doctrine does not address itself to the distinction between statutorily imposed exhaustion requirements and those of judicial origin, and we think the best interpretation of the opinion is that the quoted language refers only to the former. This reading harmonizes *Consolidated Mines* with the cases cited in part II of the text which clearly demonstrate the existence of an active judicial control over certain exhaustion requirements.

exhaustion of remedies, but retains jurisdiction of the matter to avoid the necessity of commencing the civil action all over again should the administrative remedy fail to resolve the dispute. We believe that with respect to judicially originated exhaustion requirements, this alternative is within the limited discretion of the court reviewing the agency action when the interests of justice would be served thereby.

Precisely this course of action was chosen in *Ludlum v. Resor,* 507 F.2d 398 (1st Cir. 1974), where the court of appeals ordered the district court to retain jurisdiction of a habeas corpus proceeding commenced by an Army enlisted man while he applied to the ABCMR. A comparable result was reached in *Hayes v. Secretary of Defense,* 169 U.S. App.D.C. 209, 515 F.2d 668 (1975), where an Army recruit seeking discharge via habeas corpus was required to pursue further administrative avenues of relief:

> As the question of exhaustion of administrative remedies is one addressed not to the jurisdiction of the trial court but to its judicial discretion, in appropriate cases the court may assume and retain jurisdiction over an action pending its remand to the administrative agency.

*Id.* 169 U.S.App.D.C. at 216, 515 F.2d at 675. *See also Seepe v. Department of Navy,* 518 F.2d 760, 765 (6th Cir. 1975). The Supreme Court itself acted similarly in *Gusik v. Schilder,* 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950), when, upon remanding so that a newly created remedy could be exhausted, it held that "in the interests of justice the Court of Appeals, instead of reversing the District Court and ordering the petition to be dismissed, should have . . . held the case pending resort to the new remedy . . . ." *Id.* at 133, 71 S.Ct. at 152.

■ Since an appeal to the ABCMR is not a statutorily mandated prerequisite to federal court jurisdiction, the district court was entitled to determine, in the first instance, whether exhaustion was required[4] and, if so, whether, in its discretion, it should retain jurisdiction pending exhaustion. Because the district judge was apparently unaware that these decisions were open to him, we find it appropriate to vacate his order dismissing the action and to remand the case so that he may address them.

■ On remand, the district court may find that the exhaustion of remedies issue has become moot; we have been informed by the parties that most of appellants have either exhausted their ABCMR remedy during the pendency of this appeal or are presently doing so. Should the exhaustion issue not be found moot, however, whether the ABCMR remedy must be exhausted should be decided initially by the trial court. As we have explained, in making this determination, the district judge should carefully weigh the need for an administrative record for proper judicial review, the agency's interests in applying its expertise, in correcting its own errors, and preserving the efficacy and independence of its administrative system, and particularly, the district court should carefully consider "whether allowing all similarly situated [individuals] to bypass [the administrative avenue in question] would seriously impair the [agency's] ability to perform its functions." *McGee v. United States, supra,* 402 U.S. at 484, 91 S.Ct. at 1568; *McKart v. United States, supra,* 395 U.S. at 197, 89 S.Ct. 1657. In this connection, we remind the district court that our reasoning in *Craycroft v. Ferrall,* 408 F.2d 587, 594–98 (9th Cir. 1969), *vacated and remanded,* 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970), to the extent it is found

---

4. Although the cases sometimes refer to the development of judge-made exhaustion requirements as being within the courts' "discretion," the decision whether to require exhaustion is not discretionary in the sense that it can be made solely on the basis of the equities in any given case without regard to authoritative precedent. Rather, judicially-developed exhaustion requirements are "common law" rules in that the decisions of appellate courts on this issue will govern the subsequent decisions of the lower courts to which they properly apply.

The decision whether to retain jurisdiction pending compliance with a judicially-developed exhaustion rule, however, is, as dictated by the interests of justice, properly within the limited discretion of the trial court.

applicable to the situation of appellants, may provide guidance.[5]

We are also informed that some of appellants do not wish to continue in this action and that others have been discharged from the Army. On remand, the district court should determine which appellants remain and whether the case has become moot as to those discharged. *See Bratcher v. McNamara,* 448 F.2d 222, 224 (9th Cir. 1971).

### III. *Denial of Class Certification and of Leave to Bring in Additional Plaintiffs*

 Appellants also appeal the refusal of the district judge to certify a class under Rule 23, Fed.R.Civ. P. This is a matter within the discretion of the trial court. *Yamamoto v. Omiya,* 564 F.2d 1319, 1326 (9th Cir., filed Nov. 28, 1977); *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304 at 1308-1309 (9th Cir. 1977); *Kamm v. California City Dev. Co.,* 509 F.2d 205, 210 (9th Cir. 1975); 3B Moore's Fed. Practice ¶ 23.50, at 23–1105 (1977). The district judge determined that the numerous factual distinctions among the individual claims would make a class action unmanageable. We have reviewed the record and, finding no abuse of discretion in that decision, we affirm it.

Appellants similarly contend that the district judge erroneously refused to allow an additional 13 plaintiffs to intervene in the action. Although this intervention was attempted by means of an amendment to the complaint, rather than by a motion to intervene under Rule 24, Fed.R. Civ.P., we believe the standard of review corresponding to Rule 24 governs. The additional plaintiffs do not satisfy the requirements for intervention of right under part (a) of Rule 24, and permissive intervention under part (b) is, by definition, subject to the discretion of the district judge. *Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 564 F.2d 1343, 1346 (9th Cir. 1977); *Van Hoomissen v. Zerox Corp.,* 497 F.2d 180, 181 (9th Cir. 1974); 3B Moore's Fed. Practice ¶ 24.10[4], at 24–391 (1977). The district judge acted well within his discretion when he decided that 13 additional plaintiffs would unnecessarily delay and complicate the case, and that decision is also affirmed.

An early disposition of this case on remand is appropriate since the appellants' military commitments continue in force, and if they are entitled to relief it must be prompt to be effective.

AFFIRMED in part, VACATED and REMANDED in part.

---

5. In *Craycroft,* we held that a conscientious objector was required to exhaust his appeal to the Board for Correction of Naval Records before petitioning the district court for a writ of habeas corpus. Subsequent to our decisions in *Craycroft* and in *Bratcher v. McNamara,* 415 F.2d 760 (9th Cir. 1969), a similar case, the government changed its policies with respect to conscientious objectors, no longer insisting that they appeal to the various Boards for Correction of Military Records. United States Department of Justice Memo No. 652 (Oct. 23, 1969). *See Parisi v. Davidson,* 405 U.S. 34, 38 n.3, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972). Moreover, the Board for Correction of Naval Records disclaimed jurisdiction over such cases. Because of these events, the Supreme Court by per curiam order vacated and remanded the two cases. *Craycroft v. Ferrall,* 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970); *Bratcher v. Laird,* 397 U.S. 246, 90 S.Ct. 1108, 25 L.Ed.2d 281 (1970). But the government's position in Memo No. 652, assuming it is still in force, affects only those seeking discharge from the armed forces as conscientious objectors. We do not read it as having any application to appellants here or as discrediting the reasoning in our opinion in *Craycroft.*

Other circuits have divided on the issue whether resort to the ABCMR should be required. *Compare, e.g., Hayes v. Secretary of Defense, supra,* 515 F.2d at 673–75, *with Ludlum v. Resor, supra,* 507 F.2d at 399–400. *Cf. Seepe v. Department of Navy, supra,* 518 F.2d at 762–65 (resort to Board for Correction of Naval Records required of Marine seeking discharge on grounds of breach of enlistment contract).