Omar STRATMAN, et al.,
Plaintiffs-Appellants,

v.

James G. WATT, Secretary of the Interi-
or, et al., Defendants-Appellees.

No. 79–4480.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 1980.

Decided Sept. 8, 1981.

Rehearing Denied Nov. 27, 1981.

Roger E. Henderson, Anchorage, Alaska; Frederick L. Miller, Duncan, Weinberg & Miller, Washington, D. C., argued, for plaintiffs-appellants; Roger E. Henderson, Houston & Henderson, Anchorage, Alaska, on brief.

Peter Steenland, Washington, D. C., argued, for defendants-appellees; Dan A. Hensley, Anchorage, Alaska, on brief.

Before WALLACE, HUG and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

This is an action by various individuals to enjoin the granting of land patents to a Native corporation pursuant to the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601 *et seq.* Plaintiffs seek to demonstrate that the village corporation, Leisnoi, Inc. (Leisnoi), comprising the village of Woody Island, was not qualified as a Native village under the requirements of 43 U.S.C. § 1610(b)(3).[1] Defendants include the Secretary of the Interior and Leisnoi. A series of district court rulings resulted in the dismissal of all the plaintiffs' claims, and we partially remand.

At the time suit was filed, these plaintiffs could have been grouped into two categories. The first group of plaintiffs were individuals who occasionally used the land subject to patent for recreational purposes. The other plaintiffs, Stratman and Burton, held long-term federal grazing leases on land within the area subject to patent, and were also recreational users. We affirm the district court's dismissal of the claims of the first category of plaintiffs, and reverse and remand the dismissal of the remaining recreational claims of Stratman and Burton.

The Alaska Native Claims Settlement Act (ANCSA), enacted in 1971, is intended to settle all aboriginal land claims by Natives and Native groups of Alaska. 43 U.S.C. § 1601; *Doyon, Ltd. v. Bristol Bay Native Corp.*, 569 F.2d 491, 493 (9th Cir.), *cert. denied*, 439 U.S. 954, 99 S.Ct. 352, 58 L.Ed.2d 345 (1978). ANCSA provides for accomplishment of that settlement through distribution of 40 million acres of land and payment of $962,500,000 to Native villages and regional corporations established pursuant to the Act's provisions. The Act lists many Native villages which are eligible for benefits, provided the Secretary determines

---

1. The action originally challenged two other Native villages, but those claims were separately litigated in another action, *see Koniag, Inc. v. Kleppe*, 405 F.Supp. 1360 (D.D.C.1975), *aff'd in part and rev'd in part*, 580 F.2d 601 (D.C.Cir.), *cert. denied*, 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978); those villages have subsequently been found by the Secretary to be ineligible.

they meet specified qualifications. 43 U.S.C. § 1610(b)(1) & (2). ANCSA also provides that villages other than villages specifically enumerated in the Act can qualify as recipient Native villages under certain conditions. 43 U.S.C. § 1610(b)(3).[2] Regulations promulgated by the Secretary of Interior provide for particular kinds of notice and a hearing to determine the validity of each unlisted village's application. 43 C.F.R. § 2651.2(a)(8)–(10).

Woody Island is not listed in the Act as an eligible Native village. Application was made, however, for Woody Island to be declared an eligible village. After an investigation in 1973, Woody Island was found eligible to form a village corporation and determination of that eligibility was published in the Federal Register and several Alaska newspapers in accordance with Department of Interior regulations. None of the plaintiffs received actual notice of the Woody Island village application, however, and none filed objections or participated in any hearings held on the application, which was approved by the Secretary of Interior on March 18, 1975.

After learning of Woody Island's certification and the subsequent incorporation of Leisnoi to select lands for patent, plaintiffs filed this action pursuant to 28 U.S.C. § 1331 in July 1976, claiming that the government's investigation of the application, as required by 43 U.S.C. § 1610(b)(3) and 43 C.F.R. §§ 2651.2(a)(8) & 2651.2(b), had been insufficient and that the village did not qualify as a Native village. In a published opinion, the district court initially dismissed the claims of the recreational users, other than Stratman and Burton, for their failure to exhaust administrative remedies. However it permitted Stratman and Burton, because they had property interests in the land, to amend their complaint and to proceed, notwithstanding their failure to participate in any administrative proceedings. The court determined Stratman's and Burton's record interests entitled them to actual, rather than constructive notice of the certification application when administrative proceedings were pending. *Kodiak-Aleutian Chapter of Alaska Conservation Soc'y v. Kleppe,* 423 F.Supp. 544 (D.Alaska 1976).

■ At that point, faced with a full-scale trial of the Stratman-Burton claims, Leisnoi quitclaimed any interest in all land subject to Stratman's and Burton's leaseholds, thus mooting any claims based upon economic injury. Upon application of the defendants, the district court withdrew its prior ruling in favor of Stratman and Burton and dismissed their claims on the ground that there no longer existed any "case or controversy" within the meaning of article III of the United States Constitution.[3] The district court, significantly in our view, did not expressly consider the claims of Stratman and Burton as recreational users, apparently agreeing with the defendants that the quitclaim deed eliminated Stratman's and Burton's standing to challenge the certification.

Plaintiffs in this appeal ask us to review both the dismissal of the Stratman-Burton

---

**2.** 43 U.S.C. § 1610(b)(3) provides:

Native villages . . . shall be eligible for land and benefits under this Act . . . if the Secretary . . . determines that—

(A) twenty-five or more Natives were residents of an established village on the 1970 census enumeration date as shown by the census of other evidence satisfactory to the secretary, who shall make findings of fact in each instance; and

(B) the village is not of a modern and urban character, and a majority of the residents are Natives.

**3.** Stratman and Burton argue that their economic claims are not moot because other land selections by Leisnoi may threaten harm to their future economic interests in the area. We agree with the district court's ruling that any injury to these generalized economic interests is too speculative to create a case or controversy under article III. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979); *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). *See also Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 42–44, 96 S.Ct. 1917, 1926–27, 48 L.Ed.2d 450 (1976).

claims for lack of a case or controversy and the dismissal of the recreational users' claims for failure to exhaust administrative remedies.

With respect to Stratman and Burton, the issue is whether their claims were properly dismissed following the relinquishment by Leisnoi of any claim to the land in which they had economic interests. Its ruling was based upon the defendants' argument that the plaintiffs lacked standing to pursue any claim of damage other than damage to economic interests, and thus could not pursue any remaining claim based on recreational interests.

■ A threshold question for all the plaintiffs is therefore one of standing. In determining standing, we must consider both constitutional and prudential concerns. To satisfy the constitutional requirement that a "case or controversy" has been made out, the plaintiff must allege that he has suffered injury resulting from the defendant's allegedly illegal action. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975). We have concluded that to satisfy this requirement "the plaintiffs must have alleged (a) a particularized injury (b) concretely and demonstrably resulting from defendants' action (c) which injury will be redressed by the remedy sought." *Bowker v. Morton*, 541 F.2d 1347, 1349 (9th Cir. 1976) (footnote omitted). *See also Sierra Club v. Andrus*, 610 F.2d 581, 592 (9th Cir. 1979).

■ In dealing with standing to assert recreational interests, the Supreme Court in *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972) rejected the argument that only economic interests could provide standing, pointing out that "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society ...." The plaintiffs allege they use the land subject to patent for a multitude of recreational purposes, including hunting, camping, picnicking and photogra-

phy. This injury is sufficiently particularized; it is clear that the injury results from the defendants' action in removing the land from the public domain; the injury will be redressed by the enjoining of the defendants' removal of the land from the public domain. Thus, we conclude that the plaintiffs have satisfied the constitutional requirements of standing.

Plaintiffs have also satisfied our prudential standing concerns. Plaintiffs' claims are not merely claims of generalized import, but seek to vindicate individual rights. In addition, plaintiffs are raising their own legal interests, rather than the interests of third parties. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979).

Finally, we are satisfied that plaintiffs' claim is within the zone of interests to be protected by the statute pursuant to which the claim arises. *Id.* at 100 n.6, 99 S.Ct. 1607–08 n.6, *citing Association of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1969). In considering whether that claim is within this zone of interests, we look to both the statute and the regulations promulgated under it. *See* B. Mezines, J. Stein & J. Gruff, 5 *Administrative Law* § 50.03 at 50–29 & 30 (1981) (look to statute to determine purpose and class to be protected); B. Schwartz, *Administrative Law* § 153 at 455 (1976). The regulations do not restrict the nature of protests which may be filed but rather provide that "any interested party" may protest the village certification. 43 C.F.R. § 2651.2(a)(9). The Act itself indicates that Congress was well aware of the recreational interests of users of public land, and specifically provided for retention of public access easements in the lands selected by Native villages in order to preserve and protect recreational interests in the remaining federal lands. 43 U.S.C. § 1616(b). We are thus persuaded that recreational interests are within the zone protected by the statute and we reject the defendants' argument that the recreational

claims should have been dismissed for lack of standing.

We now turn to the district court's original determination that those plaintiffs (other than Stratman and Burton) whose interests were never more than recreational should have exhausted administrative remedies. The plaintiffs argue against imposition of such a requirement on the ground that they did not have actual notice of the village's application and thus could not have utilized administrative remedies. There are, however, a vast number of occasional users of this land and actual notice to all would have been impossible. Notice was provided by publication in the Federal Register and several Alaska newspapers. The district court correctly held that neither the government nor the village was required to give actual notice to all potential recreational users, and that the publication and other notice requirements set forth in the regulations, 43 C.F.R. § 2651.2(a)(8), did not deny due process to those whose only connection with the land was, at the time of published notice, simply that of recreational users. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 658, 94 L.Ed. 865 (1950); *North Am. Pharmacal, Inc. v. HEW,* 491 F.2d 546, 551–52 (8th Cir. 1973); 44 U.S.C. § 1508. Thus, while those with recreational interests have standing to challenge the agency action in question, they may not be relieved of the prerequisite of exhaustion of administrative remedies by virtue of lack of actual notice.

Stratman and Burton, however, were not merely recreational users at the time of Woody Island's application. They had record interests in land which was subject to allotment and thus were potentially affected by the village certification at the time of the application. Given the ease with which such record interests could have

been ascertained, we agree with the district court's original determination, 423 F.Supp. at 547, that Stratman and Burton were entitled to actual notice of the proposed certification. *Schroeder v. City of New York,* 371 U.S. 208, 212–13, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962); *Walker v. City of Hutchison,* 352 U.S. 112, 116, 77 S.Ct. 200, 202, 1 L.Ed.2d 178 (1956); *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at 314, 70 S.Ct. at 657. Since they did not receive such notice, they should not be barred by exhaustion requirements.[4] *Wills v. United States,* 384 F.2d 943 (9th Cir. 1967), *cert. denied,* 392 U.S. 908, 88 S.Ct. 2052, 20 L.Ed.2d 1366 (1968).

The difficult remaining question is the effect to be given Leisnoi's subsequent disclaimer of any interest in the property encompassed by Stratman's and Burton's leases. Had such a disclaimer occurred prior to the application for certification, their interests probably would not have differed from those of any other recreational user. However, the disclaimer did not occur until after the administrative proceedings had concluded and hence after the opportunity to participate in the original determination had been lost. Since the administrative proceedings were not limited to the consideration of economic interests, a strong argument can be made that parties like Stratman and Burton, who were originally entitled to notice of the application and an opportunity to participate in the administrative hearings, and who were not given such notice, should be permitted to air all of their grievances, not merely economic grievances, in a judicial forum.

Application of the doctrine of exhaustion of administrative remedies to the Stratman-Burton claims requires a balancing of factors, however. Judicially developed exhaustion requirements, which are necessarily susceptible to judicial refine-

4. Defendants argue that because the statute provides that the allotment of land to the Native village shall be subject to any valid existing rights, 43 U.S.C. § 1613(g), there need be no notice. We disagree, for those with leasehold interests should receive notice in order to protect the rights intended to be preserved by the statute.

ment and modification, must be tailored to fit the peculiarities of an administrative system and the particular facts of each case. *Montgomery v. Rumsfeld,* 572 F.2d 250, 253 (9th Cir. 1978). A balancing analysis considers "both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and the interests of private parties in finding adequate redress for their grievances." *Id.* See also *McKart v. United States,* 395 U.S. 185, 194–95, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *SEC v. G. C. George Sec., Inc.,* 637 F.2d 685, 688 n.4 (9th Cir. 1981). In this case, Stratman and Burton, who were originally entitled to notice and an opportunity to participate in the administrative proceedings, did not deliberately flout or seek a premature interruption of the administrative process. *Contrast McGee v. United States,* 402 U.S. 479, 488, 91 S.Ct. 1565, 1571, 29 L.Ed.2d 47 (1971) (deliberately side-stepped administrative proceedings); *Pattillo v. Schlesinger,* 625 F.2d 262, 266 (9th Cir. 1980) (complete relief available through existing administrative procedures). The agency, on the other hand, undoubtedly had an interest and expertise in this basically factual dispute.

The district court, in finally disposing of this case on jurisdictional grounds, did not consider Stratman's and Burton's remaining recreational interests and therefore did not weigh the various alternatives which might be open to it in this regard. The judicial requirement of exhaustion of administrative remedies is not mechanically applied and we believe the question should be considered initially by the district court; we remand for such consideration. *SEC v. G.C. George Sec., Inc., supra,* 637 F.2d at 688 n.3; *Montgomery v. Rumsfeld, supra,* 572 F.2d at 254.

A remand is particularly appropriate here because the government, after the judg-

ment was entered, represented to this Court that it intended to conduct further administrative inquiries into the qualifications of Woody Island. If such proceedings have occurred, plaintiffs may well have been given some opportunity to present administratively the matters which they sought to litigate in a judicial forum.[5] Any pending or intervening administrative action should be taken into account by the district court in determining what, if any, further judicial proceedings in connection with Stratman's and Burton's claims are warranted.

Affirmed in part; reversed and remanded in part.

---

**5.** Although plaintiffs' brief contains extensive discussion of claimed irregularities in the application, neither this Court nor the district court has considered the merits of their challenges. Defendants' motion to strike that portion of plaintiffs' brief is denied as moot.