Marco COLON, Richard Price, Isaac McArthur, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

FEDERAL RESERVE BANK OF SAN FRANCISCO and John Balles, in his official capacity as President of the Federal Reserve Bank of San Francisco, Defendants.

No. C–81–0495 WHO.

United States District Court, N. D. California.

Jan. 8, 1982.

Fred M. Feller, Robert P. Capistrano, Thomas W. Pulliam, Jr., San Francisco Neighborhood Legal Assistance Foundation, San Francisco, Cal., for plaintiffs.

E. Judge Elderkin, Luther Kent Orton, David F. Day, Brobech, Phleger & Harrison, San Francisco, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

In this action brought under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601 *et seq.* (hereinafter cited as "the Act"), plaintiffs, Marco Colon, Richard Price and Isaac McArthur, former residents of the Lincoln Hotel ("Hotel"), now owned by the Federal Reserve Bank of San Francisco ("the Bank"), claim the Bank and its President, John Balles, violated the Act by (1) denying dislocation allowances and moving expenses (42 U.S.C. § 4622) to all former Hotel tenants who vacated the building prior to February 1, 1978; (2) denying replacement housing payments (42 U.S.C. § 4624) to all former Hotel tenants who were not continuously in residence at the Hotel from August 13, 1974, to February 1, 1978; and (3) failing to assure that satisfactory replacement housing was available to the displaced tenants of the Hotel. 42 U.S.C. §§ 4625, 4626.

Defendants have moved for summary judgment on the grounds *inter alia* that the claims of plaintiffs Price and McArthur are barred because of final and binding arbitration and that the statute of limitations has run and that the claim of the plaintiff Colon is barred because he failed to exhaust his administrative remedies. The Court grants the motion of defendant with respect to plaintiffs Price and McArthur be-

cause their claims have been determined by final and binding arbitration and with respect to plaintiff Colon's claim because he has not exhausted his administrative remedies. The Court finds it unnecessary to reach the other grounds.

## I

In 1974, the Bank purchased the property on which the Hotel was situated and continued the operation of the Hotel by its lessee, William Kunzig. In May, 1977, defendants contracted with the California Department of Transportation ("Cal Trans") to make a study in accordance with the Act as to the availability of suitable replacement housing. On the basis of the study, the Bank concluded that adequate replacement housing existed for its tenants and, accordingly, on February 1, 1978, sent eviction notices to the Hotel's tenants. No benefits under the Act were awarded prior to February 1, 1978.

By the fall of 1978 all tenants had left the Hotel. The San Francisco Neighborhood Legal Assistance Foundation ("SFNLAF"), representing former tenants, challenged the Bank's determination that suitable replacement housing existed or had been available to the displaced tenants. On July 20, 1979, SFNLAF appealed to the San Francisco Board of Permit Appeals the issuance of a permit authorizing the Bank to demolish the Hotel. This appeal was premised on the assertion that the Bank had not complied with the Act in that all displaced persons had not received full compensation and that suitable replacement housing had not been available to such persons. The Bank offered to allow all former tenants to submit their claims for benefits under the Act to an independent arbitrator. This offer was made a stipulation of the Board of Permit Appeals' order granting the demolition permit and a $300,000 fund was created for the payment of any benefits due the former tenants of the Hotel.

On September 27, 1979, the Honorable John B. Molinari, retired Justice of the California Court of Appeals, agreed to serve as arbitrator. Each claimant signed an agreement making the arbitration final and binding. SFNLAF, representing some of the claimants in the arbitration, contended that the arbitrator could not make a final and binding decision, stating that their clients wished to preserve their right to a remedy in the federal courts. The Bank opposed this position. After extensive hearings, Justice Molinari concluded that his decisions would be nonappealable with respect to the maximum benefits to which the former tenants were entitled under the Act and that any claimant who was not in accord with this determination could withdraw his or her claim. By letter, SFNLAF notified Justice Molinari that Price and McArthur had chosen not to withdraw their arbitration claims, which included individual claims for replacement housing.

McArthur was a tenant of the Hotel from October, 1975, until May, 1978, when he voluntarily vacated the premises after receiving a notice to vacate. Justice Molinari found that McArthur was not entitled to any replacement housing payments since he was not in occupancy ninety days prior to November 11, 1974, the date on which the Bank exercised its option to purchase the Hotel property, and that McArthur had not established that comparable replacement housing was not available to him. Justice Molinari concluded that the $200 dislocation allowance and the $25 moving expense allowance already paid by the Bank was all McArthur was entitled to receive.

Price was a tenant of the Hotel from July or August, 1974, until December, 1977, when he vacated the premises pursuant to a stipulation for judgment in an unlawful detainer action brought by the Bank's lessee Kunzig. Justice Molinari found that Price was not entitled to benefits under the Act because he was not a "displaced person" as defined by the Act.

Colon was a tenant of the Hotel prior to November, 1975, until early 1978. He vacated the Hotel under the belief that Kunzig was about to sell the building and he would eventually be evicted. Colon did not learn of the Bank's acquisition of the Hotel property until July, 1980. Prior to this

action Colon has never made a claim for benefits under the Act and did not participate in the arbitration proceedings.

II

It is uncontroverted that Price and McArthur voluntarily, with guidance of counsel, submitted their claims under the Act to arbitration, agreeing in writing and with the understanding that the decisions of the arbitrator would be final and binding and would preclude subsequent litigation of their rights under the Act. Both plaintiffs were given the opportunity to withdraw from the arbitration and its final and binding effects, but that did not so choose.

■ The binding effects of arbitration has long been recognized in this Circuit. In *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 656–57 (9th Cir. 1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1964), the court said:

"It is true that arbitration is a matter of contract, and that one is bound only if he agreed to submit the issue to arbitration. * * *

* * * A claimant may not voluntarily submit the issue to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act."

*See also International Brotherhood of Teamsters, Local No. 117 v. Washington Employers, Inc.*, 557 F.2d 1345 (9th Cir. 1977).

■ For the arbitration to be binding the issues sought to be litigated in court must be within the scope of the issues submitted to arbitration. *James L. Saphier Agency, Inc. v. Green*, 190 F.Supp. 713, 719 (S.D.N.Y.1961), *aff'd*, 293 F.2d 769 (2d Cir. 1961). The scope of the arbitration encompassed the entitlement to benefits under the Act. The arbitrator was empowered and obligated to give each claimant the maximum benefits to which he was entitled under the Act. Therefore, the scope of the arbitration is identical to the claims and issues now before this Court.

■ Plaintiffs argue that the body of case law giving preclusive effects to arbitral proceedings is unique to labor disputes. They contend that arbitral proceedings in labor disputes arise out of preexisting contracts providing for binding arbitration. Plaintiffs ignore the fact that there was an agreement between the claimants and the arbitrator establishing the binding and final effects of the arbitration in question.

■ Plaintiffs also argue that the arbitrator did not have the power to award the relief sought in this action, namely, declaratory and injunctive relief which would compel defendants to provide, through construction or rehabilitation, replacement housing units meeting the requirements of the Act. 42 U.S.C. §§ 4625, 4626. The arbitrator, however, found that McArthur had not demonstrated the unavailability of comparable housing units and that Price was not eligible for any benefits under the Act. If Price and McArthur had established a lack of comparable housing to which they were entitled, the arbitrator, within the scope of the arbitration, could have secured replacement housing for them. But they did not.

Plaintiffs' final contention is that the federal courts are not bound by arbitration decisions of rights arising out of federal statutes. Plaintiffs rely on two Supreme Court decisions to support this assertion. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), petitioner, claiming that his discharge resulted from racial discrimination, submitted his claim to binding arbitration pursuant to a collective bargaining agreement. The Court held that his statutory right to a trial *de novo* under Title VII of the Civil Rights Act of 1964 was not foreclosed by the prior adverse determination of the arbitration proceedings. In *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the issue was whether an employee can bring an action in the federal courts for violations of the minimum wage provisions of the Fair Labor Standards Act after unsuccessfully submitting a wage claim on the same un-

derlying facts to a joint grievance committee pursuant to a collective bargaining agreement. The Court held that the employee had an independent statutory right to bring such an action in the federal courts.

*Alexander* and *Barrentine*, however, are not controlling. One of the major bases for the holdings in *Alexander* and *Barrentine* was the determination that the statutes in question granted "individual employees broad access to the courts," *Barrentine, supra*, 450 U.S. at 740, 101 S.Ct. at 1444, and that "Congress intended the federal courts to exercise final responsibility for enforcement of Title VII." *Alexander, supra*, 415 U.S. at 56, 94 S.Ct. at 1023. There is no language in the Act or its legislative history that explicitly or inferentially vests the federal courts with such a significant role in the implementation and execution of the Act. Instead, the enforcement and implementation is primarily vested with the head of the federal agency involved in the real property acquisition.[1]

Additionally, the Court held that rights conferred by the Fair Labor Standards Act and Title VII cannot be prospectively waived. *Barrentine, supra*, 450 U.S. at 740–41, 101 S.Ct. at 1444–45; *Alexander, supra*, 415 U.S. at 51–52, 94 S.Ct. at 1021–22. In the instant case there was no prospective waiver of statutory rights under the Act. The agreements to submit the claims to arbitration were made *after* the controversy arose.[2] This agreement was knowingly and voluntarily made.

The Court also evinced a concern for potential conflicts between the collective bargaining agreement, which defines the scope of the arbitration in labor disputes, and the federal statutes. The Court emphasized that "where the collective-bargaining agreement conflicts with Title VII, the arbitrator must follow the agreement," *id.* at 56–57, 94 S.Ct. at 1024, with the "arbitrator's power [being] both derived from, and limited by, the collective-bargaining agreement." *Barrentine, supra*, 450 U.S. at 744, 101 S.Ct. at 1446. In the present action the arbitrator derived his power from and was limited only by the provisions of the Act, the statutory basis for the present suit.

Finally, the Court pointed to the discrepancies between arbitral processes and judicial processes. The Court noted that labor arbitrators are not ordinarily competent to resolve disputes arising under federal statutes due to their specialized competency. Here, Justice Molinari's qualifications make him eminently qualified to interpret the statutes. The Court also displayed a concern for the possibility that the union, which represented the employees in arbitration, might not vigorously support the employee's claim. Both Price and McArthur were represented by counsel in the arbitration proceedings. The Court's concern for the limitations on arbitral fact-finding processes are not present in this case. Extensive hearings with representation by counsel, the presentation of witnesses under oath, and the opportunities for discovery overcame many of the limitations often found in arbitral proceedings.

■■ In sum, when the parties voluntarily and knowingly agree that the arbitration, the scope of which is limited only by

---

1. This does not mean that the federal courts have no role in the enforcement of provisions of the Act, but the federal courts' role is not as significant vis-a-vis the statutory scheme as it is in the Fair Labor Standards Act or the Civil Rights Act of 1964.

2. *Alexander* suggests the possibility that even a Title VII claim could be resolved by binding arbitration if consent were given *after* the controversy arose.

   "In this case petitioner and respondent did not enter into a voluntary settlement expressly conditioned on a waiver of petitioner's cause of action under Title VII. In determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing. In no event can the submission to arbitration of a claim under the nondiscrimination clause of a collective-bargaining agreement constitute a binding waiver with respect to an employee's rights under Title VII."
   *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n.15, 94 S.Ct. 1011, 1021 n.15, 39 L.Ed.2d 147 (1974).

the provisions of a federal statute which does not expressly vest the federal courts with a final responsibility for enforcement, is to be final and binding, then those parties may not resubmit those same issues in the federal courts. The motion for summary judgment as to plaintiffs Price and McArthur is granted.

### III

This Court has jurisdiction over a dispute as to the payment of benefits under the Act pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, which requires the exhaustion of administrative remedies before judicial review. 5 U.S.C. § 704. *See United States v. 249.12 Acres of Land,* 414 F.Supp. 933, 934 (W.D.Okl.1976); *Smith v. City of Cookeville,* 381 F.Supp. 100, 106 (M.D.Tenn.1974); *Tenants & Owners in Opposition to Redevelopment ("TOOR") v. United States Department of Housing & Urban Development ("HUD"),* 406 F.Supp. 1024, 1054 (N.D.Cal.1974).

Plaintiffs Price and McArthur made applications for benefits under the Act, but failed to invoke or complete the Bank's administrative review procedures. Plaintiff Colon has never even submitted a claim to the Bank. Defendants urge this Court to dismiss plaintiffs' complaint for failure to exhaust their administrative remedies.

■ Plaintiff Colon argues that exhaustion of administrative remedies is not required because the Bank's regulations promulgated under the Act were not published in the Federal Register as required by the Administrative Procedure Act, 5 U.S.C. § 552(a)(1)(D).[3] This argument is unpersuasive. The test as to whether "a regulation is not one of general applicability within 5 U.S.C. § 552(a)(1)(D) [is] if '(1) only a clarification or explanation of existing laws or regulations is expressed; and (2) no significant impact upon any segment of the public results.'" *United States v. Mowat,* 582 F.2d 1194, 1200 (9th Cir. 1978), *cert.*

*denied,* 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 426 (1978) (citations omitted).

The Bank's regulation, § 4(c), requires "[a]pplication for benefits under the Act within 18 months from the date on which the displaced person moves from the real property acquired or to be acquired. The Relocation Officer may extend this period upon a proper showing of good cause." This regulation is merely a clarification of the statutory requirement that applications be made upon "proper application." *See* 42 U.S.C. §§ 4622(a), 4633(b)(2). By virtue of the Act, Colon had notice that a proper application was necessary in order to be eligible for benefits. No significant impact upon a segment of the public is likely since the time for application can be extended upon a showing of good cause. Had Colon applied for benefits in 1980, the Relocation Officer, under the Bank's regulations, would have been required to extend the time since it appears that Colon had good cause for not making a timely application. Instead, Colon made no effort to even ascertain whether he could make a claim for benefits.

Plaintiffs next contend that exhaustion of administrative remedies is not required where resort to the administrative remedies would be futile. *Tullock v. State Highway Commission of Missouri,* 507 F.2d 712, 715 (8th Cir. 1974). The Ninth Circuit, citing *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), distinguished those exhaustion requirements that are statutorily specified as jurisdictional prerequisites and those that are judicially developed. *Montgomery v. Rumsfeld,* 572 F.2d 250, 252–53 (9th Cir. 1978). Failure to conform to statutorily specified requirements defeats jurisdiction. *Id.* at 253. Courts may relax the exhaustion requirements that are judicially developed. *Id.* While the Act states the payments are to be made upon "proper application," this Court holds that the Act falls within the purview

---

**3.** 5 U.S.C. § 552(a)(1)(D) provides that each agency shall publish in the Federal Register "substantive rules of general applicability adopted as authorized by law, and state- ments of general policy or interpretations of general applicability formulated and adopted by the agency * * *."

of the judicially developed exhaustion doctrine. *Compare, Tullock, supra.*

■■■■ *Montgomery, supra*, 572 F.2d at 253, set the applicable standard:

"Accordingly, in determining whether the exhaustion doctrine should be rigidly applied, the Court has, on a case-by-case basis, employed a balancing analysis which considers both the interests of the agency in applying its expertise, correcting its own errors, making a proper record, enjoying appropriate independence of decision and maintaining an administrative process free from deliberate flouting, and in the interests of private parties in finding adequate redress."

In balancing the factors cited in *Montgomery,* it would be wholly inappropriate to excuse the exhaustion doctrine in Colon's case.

#### IV

For the reasons stated above,

IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is granted as to plaintiffs Price and McArthur because this Court finds that their submission of claims under the Act to final and binding arbitration precludes relitigation of those claims in this Court.

2. Defendants' motion for summary judgment is granted as to plaintiff Colon because he has failed to exhaust his administrative remedies.

Defendants shall prepare and lodge with the Court by January 22, 1982, a judgment approved as to form by counsel for plaintiffs.