**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RICHARD M. FELDMAN, an
individual; ROBERT LEE
PUDDICOMBE, an individual; IN
DEFENSE OF ANIMALS,
          *Plaintiffs-Appellants,*

v.

MARY BOMAR,* in her official
capacity as the Director of the
National Park Service; KATE
FAULKNER, in her official capacity
as the Chief of Natural Resources
Management at Channel Islands
National Park; NATIONAL PARK
SERVICE, a bureau of the US
Department of the Interior;
NATURE CONSERVANCY, an
international non-profit
corporation,
          *Defendants-Appellees.*

No. 06-55675

D.C. No.
CV-05-04900-DT

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Dickran M. Tevrizian, District Judge, Presiding

Submitted November 8, 2007**
Pasadena, California

---

*Mary Bomar is substituted for her predecessor, Fran Mainella, as
Director of the National Park Service, pursuant to Fed. R. App. P.
43(c)(2).

**The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

Filed January 10, 2008
Amended March 3, 2008

Before: Kim McLane Wardlaw, Carlos T. Bea, and
N. Randy Smith, Circuit Judges.

Opinion by Judge Wardlaw

**COUNSEL**

Yano L. Rubinstein and Cindy J. Scribe, Rubinstein Law Group, San Francisco, California, for the plaintiffs-appellants.

Todd S. Aagaard, U.S. Department of Justice, Environmental & Natural Resources Division, Washington, D.C., and Andrew B. Sabey and Scott B. Birkey, Cox, Castle & Nicholson, LLP, San Francisco, California, for the defendants-appellees.

**ORDER**

The opinion filed January 10, 2008 is amended as follows: *Slip op., page 371, line 6:* After the sentence reading, "On July 5, 2005, two years after the SCIPRP was approved, IDA, Feldman, and Puddicombe (individuals who frequent the island and enjoy viewing the pigs) filed suit principally seeking to enjoin the feral pig eradication," add footnote No. 3 as follows: "[3]Because Appellants concede the pigs could not

remain on the island and contest only the manner in which they should have been removed, it is at least open to question whether Appellants' frequenting the island and viewing the pigs is sufficient to grant them standing to pursue this action. Because we dismiss this appeal as moot, however, it is unnecessary to resolve that question."

No petition for rehearing or rehearing en banc was filed within the original time period, and that time period has now expired. No subsequent petitions for rehearing or rehearing en banc shall be filed.

IT IS SO ORDERED.

## OPINION

WARDLAW, Circuit Judge:

Richard M. Feldman, Robert Lee Puddicombe, and In Defense of Animals (IDA) (collectively "Appellants") appeal the judgment in favor of the Nature Conservancy (TNC), the National Park Service (NPS), NPS's director, and the Chief of Natural Resources Management at Channel Islands National Park (collectively "Appellees") on their claims that Appellees violated the National Environmental Policy Act (NEPA) and the California Environmental Quality Act (CEQA) in adopting NPS's program to restore and protect Santa Cruz Island by, in part, eradicating its feral pig population. Appellants do not dispute that the pigs threatened Santa Cruz Island's ecological and archeological infrastructure; however, they would have preferred eliminating the population through non-lethal means, such as sterilization or removal of the pigs to the mainland, and they challenge NPS's process in reaching its conclusion that the pigs should be killed instead. Because NPS completely eradicated the feral pigs from Santa Cruz Island during the pendency of this litigation,[1] and because Appellants allege only procedural violations in the develop-

---

[1] The district court denied Appellants' motion for preliminary injunction, and we affirmed. *Feldman v. Mainella*, 166 F. App'x 969 (9th Cir. 2006).

ment of the eradication program and do not seek compensation in monetary damages, we grant Appellees' motion to dismiss the appeal as moot. Appellees have met their heavy burden of demonstrating that "no effective relief for the alleged violation[s] can be given." *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065 (9th Cir. 2002).

# I

Santa Cruz Island, a part of the Channel Islands National Park, is located off the California coast between Ventura and Santa Barbara. The island is jointly owned by TNC and NPS, and contains a wealth of undisturbed Native American archeological resources and several unique species of plants and animals. Many of the island's notable resources, however, were adversely affected by non-native feral pigs, who rooted in the soil, destroying endangered vegetation, causing erosion, and damaging archeological artifacts. Moreover, feral piglets served as the primary food source for another non-native species, the golden eagle, that in turn hunted and decimated the native Santa Cruz Island Fox population to near-extinction. Golden eagles were attracted to the island both by the abundant food supply of feral piglets and by the relatively recent absence of native bald eagles, who historically repelled the golden eagles but were nearly obliterated by DDT and other pollutants.

In 1999, NPS convened a team to develop strategies to recover the island fox populations to viable levels. The team proposed four emergency measures: (1) "[r]elocate golden eagles from the northern Channel Islands [to the mainland]"; (2) "[e]stablish fox sanctuary/captive breeding programs on Santa Rosa and San Miguel Islands"; (3) "[e]radicate feral pigs"; and (4) "[r]eintroduce bald eagles." On February 1, 2001, NPS issued a draft Environmental Impact Statement (EIS) for the Santa Cruz Island Primary Restoration Plan (SCIPRP), which proposed, inter alia, to eradicate the non-

native feral pig population.**²** NPS allowed interested parties to comment on the draft EIS, and responded to these comments in its final EIS, which was released in June 2002 and approved in April 2003.

During the comment period, appellant IDA, a non-profit group that advocates for the humane treatment of all animals, recommended that NPS "avoid . . . all-kill policies . . . and . . . seek a non-lethal, alternative solution," such as sterilization. NPS rejected IDA's recommendation, finding that non-lethal methods were impractical. For example, NPS considered the "use of contraception or sterilization," but found that "[t]he logistics of delivering . . . sterilant to all pigs on the island [would be] an insurmountable obstacle." Similarly, it dismissed the possibility of "[l]ive capture of feral pigs and relocation to the mainland," because state agencies would not permit such transfer for fear of potential disease. Finally, NPS considered various methods of killing the feral pigs, including snares, poisons, and swine diseases, but found that "a well-placed gunshot" was far more efficient and often more humane.

On July 5, 2005, two years after the SCIPRP was approved, IDA, Feldman, and Puddicombe (individuals who frequent the island and enjoy viewing the pigs) filed suit principally seeking to enjoin the feral pig eradication.**³** They asserted that Appellants violated NEPA and CEQA by deciding to extermi-

---

**²**The reintroduction of bald eagles to Santa Cruz Island was not part of the SCIPRP. In 2002, a "Feasibility Study for Reestablishment of Bald Eagles on the northern Channel Islands, California" proposed releasing young bald eagles to Santa Cruz Island and monitoring contaminants in their eggs and food.

**³**Because Appellants concede the pigs could not remain on the island and contest only the manner in which they should have been removed, it is at least open to question whether Appellants' frequenting the island and viewing the pigs is sufficient to grant them standing to pursue this action. Because we dismiss this appeal as moot, however, it is unnecessary to resolve that question.

nate the feral pigs before releasing the EIS; failing to include the pig eradication, the golden eagle relocation, the bald eagle reintroduction, and the fox breeding in the same EIS; "tiering" the EIS on an outdated general management plan; failing to consider reasonable alternatives; failing to analyze the cumulative effects of the pig eradication; failing to create a new EIS when supplemental information about new contraceptives became available; and failing to file its environmental review documents with the California State Clearinghouse.

The district court denied all preliminary injunctive relief, and we affirmed. *Feldman v. Mainella*, 166 F. App'x 969 (9th Cir. 2006) (mem.). District Judge Tevrizian then entered summary judgment for Appellees, denying each of Appellants' claims on the merits. He also granted summary judgment on the alternative ground that Appellants' claims were barred under the doctrine of laches because Appellees were prejudiced by Appellants' two-year delay in filing suit. Appellants timely appealed, both parties completed briefing, and oral argument was scheduled for November 8, 2007.

On October 15, 2007, Appellees moved to dismiss this appeal as moot, asserting that the pig eradication challenged in this case had been completed and representing that "no pigs remain on Santa Cruz Island." The motion referenced an August 28, 2007, press release in which NPS announced the successful eradication:

> Launched in April 2005, the eradication program was completed in record time by Prohunt Inc., a professional hunting firm from New Zealand that specializes in island conservation through the elimination of non-native animals. . . . A total of 5,036 pigs were dispatched using non-lead bullets and following euthanasia guidelines set forth by the American Medical Veterinary Association.

The press release quotes Dr. Lotus Vermeer, director of TNC's Santa Cruz Island Preserve: " 'Based on extensive

monitoring over the past year we believe the island is pig-free. We are now well on our way to restoring the biological balance of the island and saving unique species found nowhere else on Earth.' " In their response, Appellants conceded they "cannot present any evidence indicating that pigs remain on the Santa Cruz Island."

## II

**[1]** As the parties acknowledge, we lack jurisdiction to hear moot claims. *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1990). However,"[t]he burden of demonstrating mootness is a heavy one." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988). Even if a case is moot with respect to injunctive relief, a court may invoke jurisdiction over a claim for declaratory relief. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121-22 (1974). Nonetheless, "a case or controversy exists justifying declaratory relief only when the challenged government activity is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Headwaters*, 893 F.2d at 1015 (internal quotation and alteration omitted). "The adverse effect . . . must not be so remote and speculative that there is no tangible prejudice to the *existing interests* of the parties." *Id.* (emphasis in original) (internal quotation and alteration omitted). "The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Gordon*, 849 F.2d at 1244.

**[2]** This motion presents the question of whether, in light of the successful eradication of the feral pigs, any "effective relief" for the alleged procedural violations exists. We have found "live" controversies in environmental cases even after the contested government projects were complete. In each of those cases, however, we could nonetheless remedy the alleged harm. *E.g.*, *Or. Natural Res. Council v. U.S. Bureau*

*of Land Mgmt.*, 470 F.3d 818, 821 (9th Cir. 2006) (finding that "an appropriate [Environmental Assessment] can yet yield effective post-harvest relief" for challenges to a timber harvesting project); *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1065-66 (9th Cir. 2002) ("If warranted, [the district court] might order the Forest Service to adjust future timber plans to compensate for this allegedly unlawful one."); *Cantrell v. City of Long Beach*, 241 F.3d 674, 678-79 (9th Cir. 2001) (finding that a challenge to the destruction of historic buildings was not moot because, although the buildings had already been destroyed, the court could still craft a remedy to mitigate the injury to the birds that had been inhabiting them); *Tyler v. Cuomo*, 236 F.3d 1124, 1137 (9th Cir. 2000) (allowing challenge to the development of a housing project that was already built because the project could still be modified to grant the plaintiff relief); *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000) (allowing challenge to the construction of a highway that was already in use because the district court could still order the highway closed or taken down); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 368 (9th Cir. 1989) (allowing challenge to a completed governmental action that threatened a certain species of fish because the court could still remedy the harm through protections in future spawning seasons); *Gordon*, 849 F.2d at 1245 (same); *Columbia Basin Land Prot. Ass'n v. Schlesinger*, 643 F.2d 585, 591 n.1 (9th Cir. 1981) (finding that a suit to enjoin construction of a power line was not moot because, although it had been built, it could still be removed). The common thread in these cases is that "the violation complained of may have caused continuing harm and . . . the court can still act to remedy such harm by limiting its future adverse effects." *Gordon*, 849 F.2d at 1245. In such a scenario, "the parties clearly retain a legally cognizable interest in the outcome." *Id.*

**[3]** Appellants' claim for declaratory relief does not fall within this scenario. They do not face a continuous, remediable harm that concretely affects their "existing interests."

*Headwaters*, 893 F.2d at 1015. Appellants have never contested that the presence of feral pigs on Santa Cruz Island endangered important archeological and ecological resources; rather, they simply desired an alternative means of resolving the problem. Now that the pigs have been killed, Appellants have suffered whatever harm could conceivably result from the challenged agency action. *See Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 798 (9th Cir. 1999) (en banc) (holding that a student's claims for injunctive and declaratory relief against a school's graduation prayer policy were moot once the student graduated because he or she had "already . . . suffered any injury that would result from the alleged forced participation in prayers [in the] graduation ceremony"). Because we cannot resurrect the pigs, nor retroactively remedy any pain that they might have felt from being shot, nor take any other action to prevent or undo the eradication at issue here, we lack the power to grant any effective relief. *See Sierra Club v. Penfold*, 857 F.2d 1307, 1318 (9th Cir. 1988).

**[4]** Appellants argue that because neither we nor they can be certain that every pig on the island has been killed, relief might be granted as to any remaining pigs, if they happen to exist. This argument is speculative at best. It is undisputed that NPS's "announcement was made after extensive monitoring over the previous year to confirm that the island is pig-free." There is no evidence in the record that any pigs remain on the island. Therefore, any alleged future harm to pigs that survived the extermination is " 'so remote and speculative that there is no tangible prejudice to the *existing interests* of the parties.' " *Headwaters*, 893 F.2d at 1015 (emphasis in original) (quoting *Super Tire*, 416 U.S. at 123) (alteration omitted).

**[5]** Appellants next cite to *Cuddy*, *Gordon*, and *Cantrell* for the proposition that we could still mitigate or reverse the damage done. However, each of those cases involved challenged government projects that had a *secondary* effect on the environment—that the government action was complete did

not preclude the court from ordering the government to mitigate or reverse these secondary effects. In *Gordon*, for example, where the government's action endangered several species of fish, the court could still mitigate the resulting harm. 849 F.2d at 1245 ("If the 1986 measures did cause damage to the coho population in violation of federal law, the damage can still be repaired or mitigated—obviously not by restoring the fish harvested in 1986, but by allowing more fish to spawn in 1989."). In this case, however, the alleged harm resulting from the government's action was not to some secondary population, it was to *the specific pigs that were eradicated*. It is unclear how that harm can subsequently be mitigated or reversed. Appellants' suggestion that "pigs could be reintroduced to the Island from the mainland" is nonsensical, because bringing more pigs from the mainland would only force NPS to develop a new plan to deal with the uncontested threat they pose to the island's natural resources. At best, these pigs would be brought to the island only so that they could (1) be returned to the mainland, or (2) be sterilized until the population died off. At worst, they would be brought to the island only so that they could later be hunted and shot. We fail to see how any of these options even remotely mitigates the harm Appellants allege in their complaint.

[6] Finally, Appellants argue that finding this case moot would allow government agencies to evade their statutory obligations:

> Appellees cannot be absolved of liability for violating NEPA and CEQA by virtue of the fact that they accomplished their illegal goal before the litigation could run its course. To have such a result be affirmed by the Court would be to give would-be environmental policy violators carte blanche to completely disregard NEPA and CEQA so long as they did so quickly—before plaintiffs and the courts could stop them. Obviously, such a result would

completely vitiate the effectiveness of such environ-
mental regulations.

We have some sympathy with this argument and our deci-
sions have made similar observations. *See Columbia Basin*,
643 F.2d at 591 n.1 ("If the fact that the towers are built and
operating were enough to make the case non-justiciable, . . .
then the BPA (and all similar entities) could merely ignore the
requirements of NEPA, build its structures before a case gets
to court, and then hide behind the mootness doctrine."). How-
ever, those considerations are lessened in this case. First,
Appellants waited two years after the NPS plan was approved
before bringing their case to court. Second, they had an
opportunity to request both a temporary restraining order and
a preliminary injunction, which were denied and affirmed on
appeal. Third, NPS in this case was rushing to complete the
pig-extermination not to evade judicial review of its chal-
lenged procedure, but because the pigs' continued presence
on the island was itself an environmental hazard. In any event,
policy considerations alone cannot invest jurisdiction where
there is no live controversy. Appellants must demonstrate a
remediable harm that effects their "existing interests." Here,
no such harm exists.

**[7]** Finally, we must ask whether this case fits within the
mootness exception for claims that are "capable of repetition,
yet evading review." "That exception applies when (1) the
duration of the challenged action is too short to allow full liti-
gation before it ceases, and (2) there is a reasonable expecta-
tion that the plaintiffs will be subjected to it again." *Padilla
v. Lever*, 463 F.3d 1046, 1049 (9th Cir. 2006) (en banc) (inter-
nal quotation omitted). Appellants can satisfy neither of these
prongs. In particular, Appellants do not challenge any repeti-
tive government policy, but rather only the one-time process
by which the final EIS was approved in this case. Given the
procedural nature of Appellants' allegations, and that the par-
ticular threat to the environment NPS faced here has been
resolved, we cannot reasonably expect that plaintiffs will be

subjected to the same alleged procedural violations in the future.

## III

Because there is no longer a live controversy, we grant Appellees' motion and dismiss this appeal as moot.

**DISMISSED.**