**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OMAR STRATMAN,
            *Plaintiff-Appellant,*

v.

LEISNOI, INC.; KONIAG, INC.; DIRK
KEMPTHORNE, Secretary of the
Interior,

            *Defendants-Appellees.*

No. 07-35934

D.C. No.
CV 02-0290 JKS

OPINION

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, District Judge, Presiding

Argued and Submitted
August 6, 2008—Anchorage, Alaska

Filed October 6, 2008

Before: Dorothy W. Nelson, A. Wallace Tashima, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Tashima

**COUNSEL**

Michael J. Snider, Anchorage, Alaska, for the plaintiff-appellant.

David C. Shilton, Environmental & Natural Resources Division, U.S. Department of Justice, Washington, D.C., for defendant-appellee Dirk Kempthorne, Secretary of the Interior.

R. Collin Middleton, Anchorage, Alaska, for defendant-appellee Koniag, Inc.

John Richard Fitzgerald, Morrison Mahoney, Boston, Mass., for defendant-appellee Leisnoi, Inc.

---

## OPINION

TASHIMA, Circuit Judge:

In 1976, Omar Stratman began his quest to challenge the Secretary of the Interior's (the "Secretary") certification of Woody Island as a native village under the Alaska Native Claims Settlement Act ("ANCSA"). Thirty-two years later, we must decide whether Congress ratified the Secretary's favorable 1974 eligibility determination when, in 1980, it enacted the Alaska National Interest Lands Conservation Act ("ANILCA") which listed Woody Island's village corporation, Leisnoi, Inc. ("Leisnoi"), as a "deficiency village corporation" entitled to lands under ANCSA. We hold that it did. Therefore, we dismiss Stratman's appeal as moot.

## BACKGROUND

### Statutory Framework

### I.   ANCSA

Congress enacted ANCSA in 1971 in order to "resolve land disputes between the federal government, the state of Alaska, Alaskan Natives, and non-native settlers." *Leisnoi, Inc. v. Stratman*, 154 F.3d 1062, 1064 (9th Cir. 1998). In its findings and declaration of policy, Congress recognized "an immediate need for a fair and just settlement" of aboriginal land claims that was to be "accomplished rapidly, with certainty, in conformity with the real economic and social needs of Natives, [and] without litigation . . . ." 43 U.S.C. § 1601(a), (b). In furtherance of this basic purpose, "Alaskan Natives received, in exchange for the extinction of all claims of aboriginal title,

approximately forty-four million acres of land and nearly $1 billion in federal funds." *Leisnoi*, 154 F.3d at 1064. These resources were distributed amongst thirteen "Regional Corporations," groups of Natives unified by a "common heritage and sharing common interests[,]" 43 U.S.C. § 1606(a), and an unspecified number of "Village Corporations," corporate entities based around native villages. 43 U.S.C. § 1607. The native villages were defined to include "any tribe, band, clan, group, village, community, or association in Alaska" either listed by name or determined by the Secretary to have met certain requirements. 43 U.S.C. § 1602(c).

To qualify as a "native village" under ANCSA, the Secretary must determine that:

> (A) twenty-five or more Natives were residents of an established village on the 1970 census enumeration date as shown by the census or other evidence satisfactory to the Secretary, who shall make findings of fact in each instance; and

> (B) the village is not of a modern and urban character, and a majority of the residents are Natives.

43 U.S.C. § 1610(b)(2). Department of the Interior ("DOI") regulations establish procedures for determining village eligibility, and initially envisioned that these determinations would be made by the end of 1973; the Director of the Juneau Area Office ("Regional Director") of the Bureau of Indian Affairs ("BIA") was required to make an initial determination of eligibility not later than December 19, 1973, 43 C.F.R. § 2651.2(a)(8), and protests to the eligibility determination were barred if brought 30 days after publication of the decision, *id.* at § 2651.2(a)(9). The Regional Director was required to render a decision as to the protest within 30 days, *id.* at § 2651.2(a)(4), and appeal from that decision could be taken before the Interior Board of Land Appeals ("IBLA"), *id.*

at § 2651.2(a)(5). That decision would not become final until personally approved by the Secretary. *Id.*

Although ANCSA fixes the total allocation from the Federal government to village corporations at twenty-two million acres, the final allocation of land to each village corporation depends upon the distribution of Native Alaskans in eligible villages. First, the area included in the patent issued to the village corporation varies based on the number of natives residing in the village: for example, a village with twenty-five Native Alaskans is entitled to patent an area of public lands equal to 69,120 acres, while a village with a population of over 600 is entitled to 161,280 acres. *See* 43 U.S.C. § 1613(a). Next, any difference between the twenty-two million acres reserved for village corporations and the amount of land actually claimed by eligible villages as discussed above must be reallocated "on an equitable basis after considering historic use, subsistence needs, and population." 43 U.S.C. § 1611(b).[1] The final allocation of lands to eligible village corporations is therefore contingent upon the resolution of the eligibility of all other putative villages within each regional corporation. Further, the village allocations affect the computation of lands granted to the regional corporations, if the area patented to the village corporations within a regional corporation exceeds the percentage of acreage allotted to the regional corporation based on its relative size within the state. *See* 43 U.S.C. § 1611(c)(1)-(2).

Once a village is deemed eligible, its village corporation may select lands pursuant to 43 U.S.C. § 1611. In those situations where land selection criteria cannot be met because of a deficiency of available lands, the Secretary must "withdraw three times the deficiency from the nearest unreserved, vacant

---

[1]In the current version of § 1611(b), Congress specified that this allocation was to have taken place no later than October 1, 2005. Aside from this addition, this section remains essentially unchanged from the 1971 version. *Compare* Pub. L. No. 92-203, § 12(b), 85 Stat. 688, 701 (1971).

and unappropriated public lands[,]" withdrawing, "insofar as possible, . . . lands of a character similar to those on which the village is located and in order of their proximity to the center of the Native village[.]" 43 U.S.C. § 1610(a)(3)(A).

The foregoing eligibility and land selection provisions of ANCSA created problems for villages within the Koniag, Inc. ("Koniag") region, Leisnoi's regional corporation, because of a shortage of available lands on Kodiak Island. A further problem for Koniag, and the village corporations in the region, was uncertainty over the status of several putative villages. In the mid- through late-1970s, eleven villages brought suits challenging ineligibility determinations made by the Secretary. *See Koniag, Inc. v. Andrus*, 580 F.2d 601, 603-04 (D.C. Cir. 1978). Congress addressed these problems in ANILCA.

## II. ANILCA

Although ANILCA is generally concerned with the designation, disposition, and management of land for environmental preservation purposes, *see* ANILCA, Pub. L. No. 96-487, § 101, 94 Stat. 2371, 2374-75, (codified at 16 U.S.C. § 3101), part of ANILCA is devoted to the implementation and cleanup of ANCSA. In particular, Part A of Title XIV includes amendments to ANCSA, and Part B contains "Other Related Provisions." *See* 94 Stat. 2374 (Table of Contents). Those provisions resolve extant membership, land, and village status questions. *See id.* Section 1427 concerned issues specific to Koniag and was referred to as the "Koniag Amendment."

Section 1427(a) contains several definitions relevant to this dispute. Because of the deficiency of available lands on Kodiak island, the Koniag villages had been previously assigned deficiency lands on the Alaska Peninsula by the Secretary. These lands, described as "Deficiency village acreage on the Alaska Peninsula," were defined as "the aggregate

number of acres of public land to which 'Koniag deficiency Village Corporations' are entitled under section 14(a) [43 U.S.C. § 1613] . . . ." § 1427(a)(2), 94 Stat. 2518. The subsection also defined "Koniag deficiency village corporation" explicitly to include Leisnoi. *See* § 1427(a)(4), 94 Stat. 2519 (" 'Koniag deficiency village corporation' means any or all of the following: . . . Lesnoi, Incorporated[.]"). Another definition made Leisnoi eligible, upon Koniag's designation, to receive land under § 12(b) of ANCSA, 43 U.S.C. § 1611(b), as a "village corporation[ ] listed . . . above[.]" § 1427(a)(5).

Subsection (b) contains several relevant substantive provisions. First, it provides that "[i]n full satisfaction of . . . the right of each Koniag Deficiency Village Corporation to conveyance under [ANCSA] of the surface estate of deficiency village acreage on the Alaska Peninsula . . . and in lieu of conveyances thereof otherwise, the Secretary of the Interior shall, under the terms and conditions set forth in this section, convey . . . lands on Afognak Island . . . ." § 1427(b)(1), 94 Stat. 2519-20. Pursuant to this exchange of lands on Afognak Island for those on the Alaska Peninsula, the claims of the deficiency villages and Koniag to lands on the Peninsula would be extinguished, all claims arising under ANCSA or this section of ANILCA relating to this transaction would be barred, and the land would be included within the Alaska Peninsula Wildlife Refuge. § 1427(b)(3), 94 Stat. 2522.

Subsection (e) resolves an ongoing legal dispute involving the eligibility challenges by the eleven villages. *See Koniag*, 580 F.2d at 601. By releasing the United States and its agents from all prior claims arising under ANCSA, they would "be deemed an eligible village" under ANCSA. § 1427(e)(1), 94 Stat. 2525. Finally, subsection (f) provides that "[a]ll conveyances made by reason of this section shall be subject to the terms and conditions of [ANCSA] as if such conveyances (including patents) had been made or issued pursuant to that Act." § 1427(f), 94 Stat. 2526.

Section 1412, in Part A of Title XIV, states that, "[e]xcept as specifically provided in this Act, (i) the provisions of [ANCSA] are fully applicable to this Act, and (ii) nothing in this Act shall be construed to alter or amend any of such provisions."

## Procedural History

In 1976, Stratman and several other plaintiffs filed suit in the District of Alaska, seeking to enjoin the Secretary from issuing lands to three villages on or around Kodiak Island, one of which was Woody Island, on the ground that the villages did not satisfy ANCSA's certification requirements. This action, No. CV 76-132, has been referred to by the parties as the decertification action.

The district court initially dismissed the claims made by the plaintiffs asserting recreational use of Woody Island because those plaintiffs did not exhaust their administrative remedies under 43 C.F.R. § 2651. *Kodiak-Aleutian Chapter of the Alaska Conservation Soc'y v. Kleppe*, 423 F. Supp. 544, 546 (D. Alaska 1976). However, Stratman and another plaintiff, Toni Burton, avoided dismissal on the ground that, as the owners of grazing leases potentially affected by Leisnoi's land selections, they were entitled to actual notice of Woody Island's certification. Leisnoi later mooted Stratman's action by relinquishing all claims to the land involving the grazing leases, *see Stratman v. Andrus*, 472 F. Supp. 1172, 1173 (D. Alaska 1979), and the district court dismissed Stratman's claim on that basis. *Id.* at 1174. This court reversed the district court, holding that Stratman's claim was not barred by a failure to exhaust administrative remedies because he was not given actual notice of the certification, and that he still had standing to sue on the basis of his alleged recreational use. *Stratman v. Watt*, 656 F.2d 1321, 1324-25 (9th Cir. 1981). We remanded to provide Stratman with the opportunity to pursue his administrative remedies. *Id.* at 1326.

On remand, in 1982, the parties entered into a settlement agreement. The failure of the parties to abide by the terms of the settlement agreement eventually resulted in our determination that Stratman could reopen the decertification action in federal court. *Stratman v. Leisnoi*, 1994 WL 681071, at *4 (9th Cir. Dec. 5, 1994). The district court concluded that the matter was not ripe for judicial review without a formal determination on the merits of Stratman's claims by the agency. It therefore remanded the matter to the IBLA and dismissed Stratman's action.

Following remand, a hearing was held on Woody Island's eligibility. The administrative law judge issued an opinion on October 13, 1999, concluding with three findings:

> (1) The alleged Village did not have 25 or more Native residents on April 1, 1970, (2) The alleged Village, as of April 1, 1970, was not an established Native village and did not have an identifiable physical location evidenced by occupancy consistent with the Natives' own cultural patterns and life-style, and (3) Less than 13 enrollees to the alleged Village used it during 1970 as a place where they actually lived for a period of time.

Three years later, the IBLA affirmed the merits of Stratman's claim. 157 I.B.L.A. 302 (2002).

Shortly thereafter, Stratman filed the instant action. In the meantime, however, Leisnoi petitioned the Secretary for review of the IBLA decision pursuant to 43 C.F.R. § 2651.2(a)(5) (providing that "[d]ecisions of the Board on village eligibility appeals are not final until personally approved by the Secretary"), and 43 C.F.R. § 4.5(a)(2) (granting the Secretary authority to "review any decision of any employee or employees of the Department . . . to reconsider a decision . . . ." ).

On December 11, 2006, the Office of the DOI Solicitor issued a memorandum reviewing the 2002 decision of the IBLA. The Solicitor concluded that § 1427 of ANILCA ratified the eligibility determination of the Secretary, and thus mooted Stratman's challenge to Leisnoi's certification. The Solicitor first observed that § 1427 was "quite clear" in treating Leisnoi as an eligible village. To the extent that the statute was ambiguous, the Solicitor resolved the ambiguity in favor of Leisnoi in light of Congress' desire to resolve the land entitlements of Koniag as soon as practicable. The Secretary adopted the Solicitor's memorandum as his own decision and "disapprove[d] the decision of the IBLA."

Following the issuance of the Secretary's decision in late 2006, Stratman filed a third amended complaint in which he sought enforcement of the IBLA's 2002 decision. On September 26, 2007, the district court granted the Secretary, Leisnoi, and Koniag's (collectively, the "defendants") motion to dismiss on the ground that § 1427 of ANILCA ratified the Secretary's 1974 eligibility determination, rendering Stratman's action moot. Stratman timely appealed.

## STANDARD OF REVIEW

We review *de novo* the district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(1). *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007). Federal jurisdiction over this case depends on whether ANILCA § 1427 has rendered Stratman's administrative challenge moot. We review this question of statutory interpretation *de novo*. *See Alaska Wildlife Alliance v. Jensen*, 108 F.3d 1065, 1069 (9th Cir. 1997).

## ANALYSIS

"[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dis-

missed." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). We have repeatedly recognized that the enactment of a new law that resolves the parties' dispute during the pendency of an appeal renders the case moot. *See, e.g.*, *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1168 (9th Cir. 2007) (interpreting relevant provisions of the Tax Relief and Health Care Act of 2006 to exempt a canal lining project from statutory environmental claims); *Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1181 (9th Cir. 2006). Here, the defendants contend that § 1427 of ANILCA had the effect of designating Leisnoi as an eligible village corporation and conveying land to Leisnoi, thereby ratifying the Secretary's eligibility determination and rendering moot Stratman's challenge. Stratman, on the other hand, contends that § 1427 is a land withdrawal and selection provision that *merely identified* Leisnoi as a village whose land selection might change *if* it satisfied the eligibility requirements of ANCSA. We agree with the defendants.

## I.  Congressional intent

### A.  *Statutory language and framework*

When interpreting a statute, we must first "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008) (citation and quotation marks omitted). Along with the specific provisions at issue, we examine "the structure of the statute as a whole, including its object and policy." *Consejo de Desarrollo Economico*, 482 F.3d at 1168 (citation and quotation marks omitted). "In viewing the statutory context, we attempt to give effect, if possible, to every clause and word of a statute . . . ." *Id.* (internal citation and quotation marks omitted). We therefore turn to § 1427 and other related provisions of ANILCA.

**[1]** Section 1427, titled "Koniag Village and Regional Corporation lands," falls within the portion of ANILCA devoted to the resolution of issues specific to villages and regional corporations. In support of their position, the defendants point to § 1427(a), which defines "[d]eficiency village acreage on the Alaska Peninsula" as "the aggregate number of acres of public land to which 'Koniag deficiency Village Corporations' are *entitled*, under section 14(a) of [ANCSA]," § 1427(a)(2) (emphasis added), and "Leisnoi, Incorporated" as a "Koniag deficiency village corporation . . . ." § 1427(a)(4). Section 14(a) of ANCSA, 43 U.S.C. § 1613(a), entitles eligible village corporations to a patent for surface estates. To the extent that a shortage of land exists around the village, § 11 of ANCSA, 43 U.S.C. § 1610(a)(3), requires the Secretary to withdraw deficiency acreage from the nearest unappropriated public lands of a similar character. Under ANCSA, a village logically must be deemed eligible before the problem of land deficiency can possibly arise. The fact that § 1427 identifies Leisnoi as a Koniag deficiency village corporation and further indicates that such deficiency village corporations are entitled to land under ANCSA is strong evidence of Congress' intent to treat Leisnoi as an eligible village.

**[2]** Section 1427(b) goes on to state that "[i]n *full satisfaction* of . . . the *right* of each Koniag Deficiency Village Corporation to conveyance under [ANCSA] of the surface estate of deficiency village acreage on the Alaska Peninsula . . . the Secretary of the Interior shall . . . convey . . . the surface estate of . . . public lands on Afognak Island . . . ." § 1427(b)(1) (emphasis added). Under the plain language of the statute, then, Leisnoi is *entitled*, § 1427(a)(2), and has the *right*, § 1427(b)(1), to public land under § 14(a) of ANCSA. This language inexorably leads to the conclusion that Congress intended to treat Leisnoi as an eligible village corporation under ANCSA. It would defy logic and common sense for Congress to deem Leisnoi entitled to deficiency lands without also implicitly having found that it was entitled to other lands

under § 14(a) of ANCSA. It would also be illogical for Congress to convey lands to an ineligible village corporation. Further, Congress identified only one condition precedent to conveyance of land to Leisnoi: Leisnoi's acceptance of the conveyance on Afognak Island in "full satisfaction of [its] respective entitlement[ ] to conveyances . . . on the Alaska Peninsula . . . ." § 1427(b)(4). Given that Congress did not require Leisnoi to meet any additional requirements to acquire land under ANCSA, it follows that Congress intended to treat Leisnoi as an eligible village, and granted it the right to land as such.

Stratman contends that the plain language of § 1427 incorporates the eligibility requirements of ANCSA. He argues that because there is no apparent conflict between § 1427's land exchange and entitlement provisions and ANCSA § 11(b)(3)'s, 43 U.S.C. § 1610(b)(3), village eligibility requirements, effect can be given to both. This approach puts the cart before the horse: he says that because the statutes *can* be read together, that Congress must have *intended* his interpretation. Yet, such an intent would appear to conflict with the unqualified declaration that Leisnoi is a deficiency village corporation, and with the fact that § 1427 does not explicitly incorporate ANCSA's eligibility requirements.

[3] Stratman raises several other arguments in support of his position based on the overall structure of the statute. First, he points to § 1427(f), which provides that "[a]ll conveyances made by reason of this section shall be subject to the terms and conditions of [ANCSA] as if such conveyances (including patents) had been made or issued pursuant to that Act." He notes that § 14(a) of ANCSA, 43 U.S.C. § 1613(a), provides for the issuance of a patent to village corporations "which the Secretary finds [are] qualified for land benefits under [ANCSA]." Because a conveyance under ANCSA can only be made after a finding of eligibility, he argues that § 1427(f) first requires a finding of eligibility. Unfortunately, this interpretation ignores the explicit language of § 1427(f). By its

own terms, the subsection is limited to "conveyances," not eligibility determinations. Further, the above-quoted provision in ANCSA which incorporates the Secretary's eligibility determination is a dependent adverbial clause: the language discussing eligibility does not govern the conveyance, but only specifies when the conveyances may occur. As such, that language does not necessarily pertain to the "ma[king] or issu[ing]" of conveyances "pursuant to [ANCSA]." § 1427(f).

**[4]** Stratman next argues if Congress had intended to exempt Leisnoi from meeting ANCSA's eligibility requirements, it would have done so explicitly: Congress clearly knew how to make exceptions to ANCSA's eligibility requirements, as it did with the seven villages which brought challenges to the Secretary's finding of ineligibility as to those villages. *See Koniag*, 580 F.2d at 601 (involving challenges brought by the ineligible Koniag villages). In § 1427(e), Congress allowed those villages to "be deemed an eligible village under [ANCSA]" if it released the United States from its prior claims brought under the act. §§ 1427(e)(1), (2). This argument cuts both ways: on the one hand, Congress could have included clear language that deemed Leisnoi eligible despite any failure to meet the eligibility requirements; on the other, the fact that Congress did not make an exception for Leisnoi, and instead listed it as a deficiency village, implies that Congress already deemed it an eligible village.[2]

**[5]** Finally, Stratman contends that § 1412, which provides that "[e]xcept as specifically provided in this Act, (i) the provisions of [ANCSA] are fully applicable to this Act, and (ii)

---

[2]Stratman also contends that the definitions of "Koniag village" and "Koniag Village Corporation" incorporate ANCSA's definitions of villages and village corporations, thus reaffirming the viability of ANCSA's certification requirements. *Compare* §§ 1427(a)(7), (8) *with* 43 U.S.C. §§ 1602(c), 1607. It is not immediately clear, however, that these definitions apply to Leisnoi, which was specifically identified as a deficiency village corporation under a different definition. *See* § 1427(a)(4).

nothing in this Act shall be construed to alter or amend any of such provisions[,]" expressly indicates that ANCSA's provisions apply absent a specific statement to the contrary. The deviations from ANCSA in § 1427, however, are specific enough to satisfy this "specific statement" requirement: a Congressional determination that Leisnoi is a village corporation exempts Leisnoi from having to satisfy ANCSA's eligibility requirements. Part B of Title XIV contains not only § 1427, resolving issues involving the Koniag region, but sections related to the specific needs of thirteen other regional or village corporations. *See* 94 Stat. 2374 (Table of Contents). The need explicitly to disclaim the requirements of ANCSA when referring to each specific transaction would be unduly burdensome, and a quick glance at the various provisions indicates that Congress did not do so in all cases. *See, e.g.*, §§ 1431(b), (c) (providing for an exchange of land between the United States and the Arctic Slope Regional Corporation without mentioning ANCSA). Moreover, in its section-by-section analysis, the Senate Committee on Energy and Natural Resources characterized § 1412 as a general "savings clause" preserving the validity of ANCSA's requirements. *See* S. Rep. No. 96-413, at 314 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 5070, 5258. In sum, a clause that makes the terms of an entire statute applicable to another statute does not necessarily displace a provision that specifically names Leisnoi as a deficiency village.[3]

B.    *Purpose*

[6] The Supreme Court observed in *Amoco Products Co. v. Gambell,* 480 U.S. 531 (1987), that "ANILCA's primary pur-

---

[3]In his reply brief, Stratman contends that the two-year statute of limitations added to ANCSA by § 902 of ANILCA, codified at 43 U.S.C. § 1632, indicates that Congress left the door open to challenges of the Secretary's eligibility determinations under ANCSA. Be that as it may, what is at issue here is not the Secretary's 1974 eligibility determination, but Congress's decision to refer to Leisnoi as a deficiency village corporation. Thus, Stratman's argument misses the point.

pose was to complete the allocation of federal lands in the State of Alaska, a process begun with the Statehood Act in 1958 and continued in 1971 in ANCSA." *Id.* at 549 (footnote omitted) (citing ANILCA § 101). Referring specifically to Title XIV, of which § 1427 is a part, the Court stated that "[t]he Act also provided means to facilitate and expedite the conveyance of federal lands within the State to . . . Alaska Natives under ANCSA." *Id.* at 550. This purpose is reflected in the Senate Committee's summary of Title XIV, which it described as designed to "simplify administration of that Act and assure that the Natives receive full benefits which the Congress intended in the original law." 1980 U.S.C.C.A.N. 5073. Section 1427 of ANILCA calls for the exchange of deficiency lands on the Alaska Peninsula for lands on Afognak Island to take place "as soon as practicable," and sets a deadline of 60 days for Koniag to designate village corporations entitled to share the surface estate under § 12(b) of ANCSA, 43 U.S.C. § 1611(b). *See* § 1427(a)(5). The desire to facilitate a rapid land allocation supports the view that Congress intended to include Leisnoi as an eligible native village corporation, rather than leave its status uncertain.

**[7]** Based on the foregoing analysis, it is clear that Congress designated Leisnoi an eligible village without requiring that it satisfy the requirements for eligibility set out in ANCSA. We decline to wade into § 1427's unhelpful legislative history to further clarify a matter of interpretation resolved on the face of the statute. *See Consejo de Desarrollo Economico*, 482 F.3d at 1168 ("If the plain meaning of the statute is unambiguous, that meaning is controlling and we need not examine legislative history as an aid to interpretation unless the legislative history clearly indicates that Congress meant something other than what it said.") (citation and quotation marks omitted).[4]

---

[4]Because we conclude that Congress clearly manifested its intent on the face of the statute, we need not reach the parties' arguments concerning the deference owed to the Secretary's interpretation of ANCSA and § 1427 of ANILCA.

## II.    Effect on the Secretary's eligibility determination

**[8]** Congress viewed § 1427 as a cleanup measure in which it exercised its authority in order to effectuate the purposes ANCSA, irrespective of determinations made by the Secretary. Absent a constitutional impediment to the exercise of its authority, the intent of Congress to designate Leisnoi as an eligible village corporation and convey land to it as such must be given effect. The Property Clause of the Constitution gives Congress the "Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States[.]" U.S. Const. art IV, § 3, cl. 2. The Supreme Court has "repeatedly observed that the power over the public land thus entrusted to Congress is without limitations." *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) (citation, quotation marks, and alterations omitted). And we have recognized Congress' power to " 'deal with its lands precisely as an ordinary individual may deal with his . . . property. It may sell or withhold them from sale.' " *United States v. Gardner*, 107 F.3d 1314, 1318 (9th Cir. 1997) (quoting *Light v. United States,* 220 U.S. 523, 536 (1911)). Stratman does not contend, nor could he, that Congress lacked the power to patent lands to Leisnoi, or to designate Leisnoi as an eligible village if it so desired. Therefore, Congress' intent to treat Leisnoi as an eligible village corporation renders moot Stratman's challenge to Leisnoi's certification on the ground that it failed to meet ANCSA's requirements.

In *United States v. Alaska*, 521 U.S. 1 (1997), the United States and Alaska disputed ownership over certain submerged lands seaward of the low water line along the Arctic Coast within two federal reservations. *Id.* at 4-5. Under the Submerged Lands Act, enacted in 1953, and the Alaska Statehood Act, enacted in 1958, as well as the equal footing doctrine, Alaska was entitled to submerged lands extending three miles seaward from the coastline of the state. *Id.* at 5-6. One of the particular issues in dispute was whether Congress exercised its Property Clause power to prevent the lands at issue from

passing to Alaska on statehood. *Id.* at 33. In 1923, the President, through an Executive Order, clearly intended to include the submerged lands at issue in the Federal reserve. *Id.* at 40. Alaska challenged the President's authority to include those submerged lands. *Id.* at 43. It argued that the source of executive authority, the Pickett Act, only granted the President the authority to select surface lands for the reserve. *Id.* at 44. The Court stated that even assuming that the President did not have authority under the Pickett Act to reserve the lands for the federal government, "Congress ratified the terms of the 1923 Executive Order in § 11(b) of the Statehood Act." *Id.* It held that the Executive Order "placed Congress on notice that the President had construed his reservation authority to extend to submerged lands and had exercised that authority to set aside . . . submerged lands in the Reserve . . ." *Id.* at 45. "Accordingly, Congress ratified the inclusion of submerged lands within the Reserve, whether or not it had intended the President's reservation authority under the Pickett Act to extend to such lands." *Id.*

[9] The mode of analysis in *Alaska* applies in this case. Congress clearly had the authority to designate Leisnoi an eligible village and to confer upon Leisnoi public lands. Its awareness of the Secretary's 1974 eligibility determination in favor of Leisnoi is established by the fact that Leisnoi was named in § 1427. *See* § 1427(a)(4). Regardless of whether the Secretary correctly determined that Leisnoi was eligible under ANCSA, Congress referred to the eligibility determination when it included Leisnoi as a "deficiency village corporation" endowed with the right "to conveyance under [ANCSA] of the surface estate of deficiency village acreage on the Alaska Peninsula[.]" §§ 1427(a)(4), (b)(1)(B). As in *Alaska*, the subsequent action of Congress makes the propriety of the underlying decision irrelevant, *even if* the underlying decision might have transgressed the intent of Congress. We have previously treated as final land conveyances to regional and village corporations under ANILCA:

Cube Cove was conveyed to Shee Atika and Sealaska by section 506 of ANILCA, . . . which provides in relevant part:

> (c)(1) In satisfaction of the rights of the Natives of Sitka, . . . the Secretary of the Interior, upon passage of this Act, shall convey subject to valid existing rights . . . the surface estate in [Cube Cove].
>
> . . .
>
> We refuse to attribute to Congress the purpose [asserted by plaintiffs] to place . . . restrictions on land-use absent a clear expression of intent.

*City of Angoon v. Hodel*, 803 F.2d 1016, 1022-23 (9th Cir. 1986).

[10] Further, whether Congress conveyed land to Leisnoi under the allegedly mistaken assumption that Leisnoi was an eligible village is irrelevant. "While it is essential . . . [that] government agencies[ ] comply with the law, . . . . [w]hether Congress was acting under a misapprehension of fact or law is irrelevant once legislation has been enacted." *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1461 (9th Cir. 1992). As long as the legislation is valid, it is not the duty of the courts to revise it:

> If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.' This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us.

*Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) (internal citation and quotation marks omitted). Congress treated Leisnoi as an eligible village, and conferred land rights to Leisnoi. By doing so, it ratified the Secretary's eligibility decision.[5]

## CONCLUSION

**[11]** We are not unmindful of the failure of our legal system to accomplish "rapidly, with certainty, [and] without litigation," 43 U.S.C. § 1601(b), a resolution of the disputed claims in this case. Nearly thirty years have now passed since the enactment of ANILCA and it is time to bring this litigation to an end. We hold that § 1427 ratified the eligibility determination that Stratman seeks to challenge, leaving us unable to grant Stratman's requested relief under ANCSA regardless of the merits of his claims. Because we lack jurisdiction to hear moot claims, *see Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008), we dismiss this appeal. *Id.* at 644. Each party shall bear his or its own costs on appeal.

**DISMISSED.**

---

[5]The foregoing analysis leads us to reject Stratman's contention that in order to conclude that ANCSA's eligibility requirements do not apply to Leisnoi, we must find that § 1427 repealed the relevant eligibility and enforcement provisions of ANCSA.