Opinion by Judge TASHIMA; Concurrence by Judge N.R. SMITH.
OPINION
TASHIMA, Circuit Judge:
Plaintiffs Protect Marriage Washington (“PMW”), John Doe # 1, and John Doe #2 (collectively, “Plaintiffs”) seek to enjoin Defendants, the Secretary of State and Public Records Officer of the State of Washington, from releasing the names of people who signed petitions supporting a Washington referendum. These petitions are already widely available on the internet. We dismiss this case as moot because we cannot grant Plaintiffs effective relief.
I
Washington citizens can use the referendum process to reject bills passed by the Washington legislature. Wash. Const, art. II, § 1(b). The referendum process is initiated when petitions with enough valid signatures of registered voters, together with their printed names and addresses, are filed with the Secretary of State. Wash. Rev.Code § 29A.72.130. Washington’s Public Records Act (“PRA”) requires state agencies to make public records available for public inspection. Id. § 42.56.070.[1]
Washington Senate Bill 5688 expanded the rights and responsibilities of state-registered domestic partners. On July 25, 2009, PMW submitted signed petitions to the Secretary of State in support of a referendum to overturn Senate Bill 5688. Three days later, Plaintiffs filed a two-count complaint which sought to enjoin the State from publicly releasing the petitions. The district court granted a temporary restraining order the next day.
Count I of the Plaintiffs’ complaint alleges that the PRA violates the First Amendment as applied to referendum petitions because it is not narrowly tailored to serve a compelling government interest. The district court initially agreed. Doe v. Reed, 661 F.Supp.2d 1194 (W.D.Wash. 2009). We reversed, Doe v. Reed, 586 F.3d 671 (9th Cir.2009), and granted Plain *1238 tiffs’ motion for a stay pending final resolution of the appeals. The Supreme Court affirmed our decision, Doe v. Reed, — U.S. -, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010), and also rejected a motion to vacate the stay, (U.S. Dkt. Oct. 20, 2009).
On remand, the district court considered Count II, which claims that releasing the names of the signers of this petition would violate the First Amendment because the signers would be subjected to threats, harassment, and reprisals. On October 17, 2011, the district court granted Defendant’s motion for summary judgment and dissolved the preliminary injunction. The State immediately began to release the petitions.
Also on October 17, Plaintiffs filed a notice of appeal and a motion for an injunction pending appeal in the district court. Before the district court ruled on that motion, Plaintiffs filed an emergency motion for an injunction pending appeal in this Court on October 20, 2011. We denied the motion without prejudice, but enjoined the State from releasing the petitions until five days after the district court’s ruling. On November 8, 2011, the district court denied Plaintiffs’ motion because it found that Plaintiffs failed to show a likelihood of success on the merits. The next day, Plaintiffs renewed their motion before this panel, and a week later we denied the renewed motion. Plaintiffs requested an injunction pending appeal from Circuit Justice Kennedy, who referred the matter to the full Court, which in turn denied it.
The petitions are now available in original and in searchable form on the internet.
II
This Court reviews a district court’s grant of summary judgment de novo. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir.2007). We review mootness de novo. S. Cal. Painters & Allied Trades v. Rodin & Co., Inc., 558 F.3d 1028, 1034 n. 6 (9th Cir.2009).
Ill
Standing is a “jurisdictional issue[ ] deriving from the requirement of a case or controversy under Article III.” Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir.2000) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). “The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.” Feldman v. Bomar, 518 F.3d 637, 642 (9th Cir.2008) (internal quotation marks omitted). This case is moot because no effective relief remains available to Plaintiffs. No exception to the mootness doctrine applies because this is not the type of case that is capable of repetition, yet evading review.
A
Count II seeks an injunction preventing defendants from making these petitions available to the public. This relief is no longer available because the petitions are now available to the public.
“In deciding a mootness issue, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief.” Or. Natural Res. Council v. U.S. Bureau of Land Mgmt., 470 F.3d 818, 820 (9th Cir.2006) (internal quotation marks and alterations omitted); see also Feldman, 518 F.3d at 642. PMW argues that we could grant “effective relief’ by preventing the State from fulfilling additional public records requests for the petitions and preventing Intervenors Washington Coalition for Open Government and *1239 Washington Families Standing Together from distributing the petitions. But the petitions are already available on websites that are not under the control of the State or Intervenors. If anyone with an internet connection can easily obtain the images of the original documents online, it is not clear why anyone would bother filing an additional public records request. And if someone did file such a request, the State would realistically not be contributing to the “further disclosure” of the petitions by responding to the request. A moot case cannot be revived by alleged future harm that is “so remote and speculative that there is no tangible prejudice to the existing interests of the parties.” Feldman, 518 F.3d at 643 (internal quotation marks omitted) (holding a claim seeking the humane removal of feral pigs from an island became moot once monitoring indicated that all pigs had been killed).
Similarly, in the FOIA context, we have held in an appeal challenging the district court’s order unsealing FOIA documents, that the appeal would become moot once the documents were unsealed, because “the unsealing cannot be reversed.” Islamic Shura Council of S. Cal. v. FBI, 635 F.3d 1160, 1164 (9th Cir.2011).
The Eleventh Circuit has also held that a case seeking to keep a document secret is moot once third parties have control over copies of the document. See C & C Prods., Inc. v. Messick, 700 F.2d 635, 636-37 (11th Cir.1983) (dismissing appeal as moot because plaintiffs “sole assignment of error is that the district court erred in modifying the protective order to permit [a third party] to utilize the discovery materials,” but the materials had been released to the third party and “no order from this court can undo that situation”). This is in contrast to situations in which a court can grant some effective relief with an order directed at the parties appearing before it. See Church of Scientology of Cal. v. United States, 506 U.S. 9, 13, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (the court could “effectuate a partial remedy” in a case seeking to prevent IRS from obtaining certain evidence after IRS obtained the evidence by “ordering the Government to destroy or return any and all copies it may have in its possession”); In re Grand Jury Investigation No. 78-184, 642 F.2d 1184, 1188 (9th Cir.1981), aff'd sub nom. United States v. Sells Eng’g, Inc., 463 U.S. 418, 422 n. 6, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983) (rejecting mootness argument because not all attorneys, paralegals, and staff had seen the released material and therefore “we can grant partial relief by preventing further disclosure”); see also United States v. Nix, 21 F.3d 347, 350 (9th Cir.1994) (release of grand jury documents to litigants who had settled case was not moot because some class members had opted out and “there still exists the potential for further litigation and further disclosure”).
Plaintiffs cite two cases in which, they argue, a court found a live controversy after documents had been disclosed to parties who were not before the court. We decline to follow Detroit International Bridge Company v. Federal Highway Administration, which held that a case seeking to prevent the release of a report to a congressman was not moot even after the defendant released the report to the congressman. 666 F.Supp.2d 740, 742-45 (E.D.Mich.2009). The court in Detroit International admitted that it was “skeptical” and acknowledged that it was “doubtful of its ability to offer an effective or meaningful remedy.” Id. at 744 — 45. We cannot agree that, under such circumstances, the case had not become moot.
In United States v. Smith, after the government publicly released a sentencing memorandum that contained allegations of criminal conduct against uncharged individuals, the district court sealed the sen *1240 tencing memorandum and denied a motion by various newspapers for access to the sentencing memorandum and the sealed briefs. 123 F.3d 140, 143, 145 (3d Cir. 1997). Consistent with our disposition of this case, the Third Circuit held that a motion by newspapers to access the released sentencing memorandum was moot because the newspapers “already possessed] it,” and rejected the newspapers’ claim to access the briefs because such access would “disclose additional confidential material.” Id. at 146, 154. The court added, however, that “[e]ven if the dissemination by members of the public continues,” an order barring further disclosure of the material in the sentencing memorandum “will at least narrow that dissemination.” Id. at 155. This statement is dictum and does not undermine our commonsense conclusion that once a fact is widely available to the public, a court cannot grant any “effective relief’ to a person seeking to keep that fact a secret. We doubt, because of the information’s availability on the internet, that enjoining further disclosure by the parties will “narrow [any further] dissemination.”[2]
B
An exception to the mootness doctrine is created when the circumstances in question meet the following two-prong test: “(1) the challenged action is in its duration too short to be fully litigated pri- or to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.” Fed. Election Comm’n v. Wisc. Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007). The exception does not apply in this case because it fails prong one.
Cases that qualify under prong one present controversies of inherently limited duration. In one of these cases, it is not “reasonably foreseeable” that plaintiffs can obtain full review before their case becomes moot. First Nat’l Bank of Bos. v. Bellotti, 435 U.S. 765, 774, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). For example, “[pjregnancy provides a classic justification for a conclusion of nonmootness. It truly could be capable of repetition, yet evading review.” Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (quotation marks omitted). Cases challenging a prior restraint on free speech also typically fit into this exception. See, e.g., Carroll v. President & Comm’rs of Princess Anne, 393 U.S. 175, 178-79, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) (holding that a First Amendment challenge to an expired restraining order which had enjoined a rally was not moot). Cases that only present live controversies in brief periods before an election present another example. See, e.g., Wisc. Right to Life, Inc., 551 U.S. at 462, 127 S.Ct. 2652 (defendant “had no way of knowing well in advance that it would want to run ads on judicial filibusters” shortly before the election when such ads were prohibited under challenged law); Bellotti, 435 U.S. at 774, 98 S.Ct. 1407 (“In each of the legislature’s four attempts to obtain constitutional authorization to enact a graduated income tax, ... the period of time between legislative authorization of the proposal and its submission to the voters was approximately 18 months.”).
There was no inherent limit on the duration of this controversy. The district court granted a temporary restraining order the day after Plaintiffs filed their complaint in July 2009. The petitions were not re *1241 leased until October 2011. The release was not timed to a 27-month deadline inherent in this type of petition. And unlike the election-related cases granting an exception like Wisconsin Right to Life and Bellotti, the issues in this case were not moot once the election was held. See also Feldman, 518 F.3d at 644 (noting that plaintiffs “had an opportunity to request both a temporary restraining order and a preliminary injunction, which were denied and affirmed on appeal”). Because it is reasonably foreseeable that this type of challenge could be fully litigated before becoming moot, this type of challenge does not evade review.
IV
Because this case is moot, we lack jurisdiction to consider its merits. Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 93-94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Accordingly, we DISMISS this appeal.

. A more detailed factual background can be found in our previous opinion, Doe v. Reed, 586 F.3d 671 (9th Cir.2009), and in the Supreme Court's opinion, Doe v. Reed, — U.S. -, 130 S.Ct. 2811, 177 L.Ed.2d 493 (2010).

. The concurrence relies on these same cases, see Concurrence at 1241-45, to support its assertion that some effective relief may still be available to Plaintiffs. But none of these cases involved the posting of the information sought to be kept confidential on the internet by third-parties.