**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NORTHWEST CENTER FOR
ALTERNATIVES TO PESTICIDES; et. al.,

        Plaintiff-Appellant,

  v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; et al.,

        Defendants-Appellees.

No.   21-35751

D.C. No. 3:20-cv-01816-IM

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted October 7, 2022
Portland, Oregon

Before: OWENS and MILLER, Circuit Judges, and PREGERSON,[**] District
Judge.

   Plaintiffs Northwest Center for Alternatives to Pesticides, Willamette

Riverkeeper, Cascadia Wildlands, Neighbors for Clean Air, and 350PDX

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

    [**]    The Honorable Dean D. Pregerson, United States District Judge for
the Central District of California, sitting by designation.

(collectively "NCAP") appeal the district court's grant of Defendants' (U.S. Department of Homeland Security and its Secretary Alejandro Mayorkas, collectively "DHS") motion to dismiss. We have jurisdiction under 28 U.S.C. § 1291, and we dismiss this appeal as moot.[1]

NCAP alleges that DHS violated the National Environmental Policy Act ("NEPA") by not preparing an environmental analysis for Operation Diligent Valor, which deployed additional law enforcement personnel to Portland and used various riot control agents, including tear gas and other chemical agents, for crowd control. DHS argues that NCAP's sole claim is moot because Operation Diligent Valor has ended. Although NCAP does not concede that Operation Diligent Valor is over, NCAP does not assert that DHS is continuing to use tear gas and other chemical agents in Portland.

The end of DHS's use of tear gas and other chemical agents in Portland during Operation Diligent Valor renders NCAP's claim moot unless "the violation complained of may have caused continuing harm and . . . the court can still act to remedy such harm by limiting its future adverse effects." *Feldman v. Bomar*, 518 F.3d 637, 643 (9th Cir. 2008) (citation omitted). NCAP argues that belated NEPA analysis would limit future adverse effects because (1) chemicals used by DHS entered the Willamette River, and if these chemicals were analyzed, any pollution

_____

[1] DHS's motion to supplement the record (Dkt. No. 29) is granted.

2

they are causing could be better addressed, (2) NCAP's members have ongoing injuries that may be better treated if they can identify the type and quantity of chemicals they were exposed to, (3) DHS may decide, based on the results of belated analysis, not to use the same type or quantity of chemicals in the future, and (4) DHS may itself take action to mitigate any environmental harms that it caused.

We find that NCAP's arguments are too speculative. Contrary to NCAP's contention, this case is unlike *Columbia Basin*, in which the offending power lines were still in operation and could be moved. *See Columbia Basin Land Prot. Ass'n v. Schlesinger*, 643 F.2d 585, 591 n.1 (9th Cir. 1981). The possibility that a belated NEPA analysis would improve mitigation or change DHS conduct in the future is too remote and speculative under our precedent. *See, e.g.*, *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978).

As for the possibility that DHS's use of chemical agents is capable of repetition and would otherwise evade review, *Spencer v. Kemna*, 523 U.S. 1, 17 (1998), NCAP has not met its burden to invoke this exception. Specifically, NCAP did not establish that DHS regularly causes the injuries alleged here, let alone that DHS is likely to inflict the same injuries on NCAP in the future. *See Sample v. Johnson*, 771 F.2d 1335, 1342 (9th Cir. 1985) (collecting cases "placing the burden for showing a likelihood of recurrence firmly on the plaintiff").

3

Because we find NCAP's claim moot, we decline to reach DHS's other arguments.

**DISMISSED.**